Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone:  (408) 429-6506
pgore@prattattorneys.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| ROBERT  PRATT, individually and on behalf of all others similarly situated, | **Case No.** CV 12-05652 EJD |
| Plaintiff, | **CLASS ACTION AND REPRESENTATIVE ACTION** |
| vs. | |
| WHOLE FOORS MARKET CALIFORNIA, INC.; MRS GOOCH'S NATURAL FOODS MARKET, INC.; WFM-WO, INC.; and WFM PRIVATE LABEL, L.P. | **AMENDED COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF** |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, through his undersigned attorneys, brings this lawsuit against Defendants Whole Foods Market California, Inc., Mrs. Gooch's Natural Foods Market, Inc., WFM-WO, Inc., and WFM Private Label, L.P., (hereinafter referred to as "Whole Foods" and/or Defendants) as to his own acts, upon personal knowledge, and as to all other matters upon information and belief.

## I.    DEFINITIONS

1.    "Class Period" is November 2, 2008 to the present.

2.    "Purchased Products" are the products listed below that were purchased by Plaintiff during the Class Period.

   a.   365 Everyday Value Organic Chicken Broth

b. 365 Everyday Value Tomato Ketchup

c. 365 Everyday Value Organic Ketchup

d. 365 Everyday Value Apple Cinnamon Instant Oatmeal

e. 365 Everyday Value Whipped Topping

f. 365 Everyday Value Cola

g. 365 Everyday Value Ginger Ale

h. 365 Everyday Value Root Beer

i. Natural Italian Soda in green apple flavor

j. Natural Italian Soda in blood orange flavor

3. "Substantially Similar Products" are the products that: (i) make the same label representations, as described herein, as the Purchased Products and (ii) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875 *et seq.* (the "Sherman Law") as the Purchased Products, as described herein.

## II.     SUMMARY OF THE CASE

4. Plaintiff's case has two distinct facets. First, the "UCL unlawful" part. Plaintiff's first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"). Plaintiff alleges that Defendants package and label the Purchased Products in violation of California's Sherman Law which adopts, incorporates – and is identical – to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA"). These violations (which do not require a finding that the labels are "misleading") render the Purchased Products "misbranded" which is no small thing. Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold. Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless. Indeed, the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products. This "misbranding" – standing alone without any allegations of deception by Defendants or review of or reliance on the labels by Plaintiff – give rise to Plaintiff's first cause of action under the UCL. To state a claim under the unlawful prong, Plaintiff need only allege that she would not have

purchased the product had she known it was misbranded because she would have a product that is illegal to own or possess.

5.     Second, the "fraudulent" part. Plaintiff alleges that the illegal statements contained on the labels of the Purchased Products – aside from being unlawful under the Sherman Law – are also misleading, deceptive, unfair and fraudulent. Plaintiff describes these labels and how they are misleading. Plaintiff alleges that prior to purchase she reviewed the illegal statements on the labels on the Purchased Products, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products. Had Plaintiff known the truth about the products there would have been no purchases.

6.     Plaintiff did not know, and had no reason to know, that the Purchased Products were misbranded under the Sherman Law and bore food labeling claims that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that Defendants' Purchased Products were false and misleading.

## III.    BACKGROUND

7.     Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about companies that flout those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food has no economic value and is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

8.     Whole Foods is the largest retailer of natural and organic foods in the United States, Canada and the United Kingdom.

9.     Whole Foods' sales revenues for 2011 from the sale of its products topped $10 billion.

10.     As part of its overall marketing strategy, Whole Foods has recognized the desire of many of its consumers to eat a healthier diet.  Whole Foods recognizes that naturalness and health claims drive sales, and, therefore, actively promotes the naturalness and health benefits of its products.

AMENDED CLASS ACTION COMPLAINT                                                     3
CASE NO CV12-05652 (EJD)

11.     For example, Whole Foods makes the following representations regarding its products:

- "People are increasingly embracing healthier lifestyles to improve the quality of their lives and minimize their healthcare costs."

- "As America's healthiest grocery store, we are uniquely positioned to benefit from this major demographic evolution."

- We believe that many customers choose to shop our stores because of their interest in health, nutrition and food safety.  We believe that our customers hold us to higher food safety standards than other supermarkets."

12.     Whole Foods actively promotes the purported naturalness and health benefits of the Purchased Products and Substantially Similar Products, notwithstanding the fact that such promotion violates California and federal law.

13.     For example, the label of Whole Food's 365 Organic Everyday Chicken Broth purchased by Plaintiff fails to disclose that it contains sugar as an ingredient.  Instead, the label lists "ORGANIC EVAPORATED CANE JUICE" as an ingredient, when such a term is not the common or usual name for this ingredient and this ingredient is not "juice" at all.  Whole Foods fails to disclose the fact that "EVAPORATED CANE JUICE" is, in its ordinary and commonly understood terms, "sugar," or dried sugar cane syrup.

14.     If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled.  As described more fully below, Defendants have made, and continue to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels.  These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional or other desirable benefit over otherwise similar food products that do not claim such benefits or that fully disclose certain undesirable ingredients.  More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet, or does not contain any

nutrients at levels that raise the risk of diet-related disease or health-related condition.

15.     Identical federal and California laws regulate the content of labels on packaged food.  The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").  California Health & Safety Code § 109875, *et seq.*  Under FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling.  21 U.S.C. § 343(a).

16.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951).  Under the FDCA, it is not necessary to prove that anyone was actually misled.

17.     In promoting the naturalness and health benefits of the Purchased Products and Substantially Similar Products, Defendants claim to understand the importance of communicating responsibly about its products.  Nevertheless, Defendants have made, and continue to make, false and deceptive claims on the Purchased Products and Substantially Similar Products in violation of federal and California laws that govern the types of representations that can be made on food labels.  In particular, in making their unlawful "no sugar added" and "evaporated cane juice" claims on the Purchased Products and Substantially Similar Products, Defendants have violated ingredient and nutrient content labeling regulations mandated by federal and California law by listing sugar and/or sugar cane syrups as "evaporated cane juice and by using prohibited terms like "no sugar added" on products that fail to comply with the nutritional requirements for making such claims.  According to the FDA, the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or

dried form of cane syrup is "sugar" or "dried cane syrup." According to the FDA, sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." The FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Similarly, 21 CFR 101.60 prohibits the use of the term "no sugar added" on products that are as high in calories as the Defendants' unlawfully labeled products or which contain ingredients that are barred because they are or act as added sugar.

18.    By making unlawful "all natural," "natural" and "naturale" claims on the Purchased Products and Substantially Similar Products, Defendants have violated labeling regulations mandated by federal and California law, which forbid the use of such labeling if the product contains artificial ingredients, flavorings, coloring, and/or chemical preservatives. Similarly, by claiming their products are free of artificial ingredients, flavorings, coloring, and/or chemical preservatives when they actual contain such components or by failing to describe the functions of such components Defendants have engaged in labeling practices that are unlawful and false and misleading.

19.    Defendants have made, and continue to make, unlawful claims on food labels of the Purchased Products and Substantially Similar Products that are prohibited by federal and California law, and which render these products misbranded. Under federal and California law, the Purchased Products and Substantially Similar Products cannot legally be manufactured, advertised, distributed, held or sold. Defendants' false and misleading labeling practices stem from its marketing strategy. Thus, the violations and misrepresentations are similar across product labels and product lines with numerous products bearing the same exact type of unlawful claims as the unlawfully labeled products purchased by the Plaintiff.

20.    Defendants' violations of law include the illegal advertising, marketing, distribution, delivery and sale of the Purchased Products and Substantially Similar Products to consumers in California and throughout the United States.

**PARTIES**

21.     Plaintiff, Robert Pratt is a resident of Los Gatos, California who purchased the Purchased Products during the four (4) years prior to the filing of this Complaint (the "Class Period").

22.     Whole Foods Market California, Inc. is a California corporation doing business in the State of California and throughout the United States of America.  It can be served with process by serving its registered agent: CT Corporation System, 818 W. 7th St., Los Angeles, CA 90017-3407.

23.     WFM-WO, Inc. is a Delaware Corporation, doing business in the State of California and throughout the United States of America.  It can be served with process in California by serving their local registered agent at: CT Corporation System, 818 W. 7th St., Los Angeles, CA 90017-3407.

24.     WFM Private Label, L.P. is a Delaware Corporation, doing business in the State of California and throughout the United States of America.  It can be served with process by serving their registered agent: CT Corporation System, 350 N. Saint Paul St., Suite 2900, Dallas, TX 75201-4234.

25.     Mrs. Gooch's Natural Foods Markets, Inc. is a Nebraska Corporation, doing business in the State of California and throughout the United States of America.  It can be served with process by serving their registered agent: CT Corporation System, 1024 K St., Lincoln, NE 68508-2851.

26.     Defendants are a leading producer and distributor of retail packaged grocery products, including the Purchased Products and Substantially Similar Products.  Defendants sell their food products to consumers through its stores throughout the United States under labels such as Whole Foods Market, 365 Organic Everyday Value and 365 Everyday Value.

**IV.   JURISDICTION AND VENUE**

27.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims

1   of the proposed class members exceed $5,000,000 in the aggregate.

2   28.   Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

3   28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

4   between citizens of different states.

5   29.   The Court has personal jurisdiction over Defendants because a substantial portion

6   of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to

7   do business in California, have sufficient minimum contacts with California, and otherwise

8   intentionally avail themselves of the markets in California and the United States through the

9   promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by

10  this Court permissible under traditional notions of fair play and substantial justice.

11  30.   Because a substantial part of the events or omissions giving rise to these claims

12  occurred in this District and because the Court has personal jurisdiction over Defendants, venue is

13  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

14  **V.     FACTUAL ALLEGATIONS**

15      **A.     <u>Identical California And Federal Laws Regulate Food Labeling</u>**

16  31.   Food manufacturers are required to comply with identical federal and state laws

17  and regulations that govern the labeling of food products.  First and foremost among these is the

18  FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

19  32.   Pursuant to the Sherman Law, California has expressly adopted the federal

20  labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

21  amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

22  or adopted on or after that date shall be the food regulations of this state."  California Health &

23  Safety Code § 110100.

24  33.   In addition to its blanket adoption of federal labeling requirements, California has

25  also enacted a number of laws and regulations that adopt and incorporate specific enumerated

26  federal food laws and regulations.  For example, food products are misbranded under California

27  Health & Safety Code § 110660 if their labeling is false and misleading in one or more

28  particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails

to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110725 if the label fails to state the common or usual name of ingredients in a food fabricated of two or more ingredients; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

### B.   FDA Enforcement History

34.   In recent years the FDA has become increasingly concerned that food manufacturers were disregarding food labeling regulations. To address this concern, the FDA elected to take steps to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority.

35.   In October 2009, the FDA issued a Guidance For Industry: Letter regarding Point Of Purchase Food Labeling ("2009 FOP Guidance"), to address its concerns about front of package labels. The 2009 FOP Guidance advised the food industry:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.
>
> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and

Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

36.    The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

37.    Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the unlawful and misleading food labeling claims from the Purchased Products and Substantially Similar Products.

38.    On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and

Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. …

As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices ….

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

39.     In addition to its guidance to industry, the FDA has sent warning letters to industry, including the Defendants and many of Defendants' peer food manufacturers for the same types of unlawful nutrient content claims described above.

40.     In these letters dealing with unlawful nutrient content claims the FDA indicated that as a result of the same type of claims utilized by the Defendants, products were in "violation

of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and were "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a nutrient content claim but does not meet the requirements to make the claim."  Similarly, letters such as the one received by the Defendant for unlawful "all natural" claims similar to those at issue here indicated that the products at issue were "misbranded under section 403(a)(1) of the Act" because their labels were "false and misleading."

41.    The warning letters were hardly isolated as the FDA has issued over 10 other warning letters to other companies for the same type of food labeling claims at issue in this case.

42.    The FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the labels on the Purchased Products and Substantially Similar Products in response to the warning letters sent to other companies.

43.    Defendants also have ignored the FDA's Guidance for Industry, A Food Labeling Guide which details the FDA's guidance on how to make food labeling claims. Defendants continue to utilize unlawful claims on the labels of the Purchased Products and Substantially Similar Products.  Despite all warnings, the Purchased Products and Substantially Similar Products continue to run afoul of FDA guidance as well as federal and California law.

44.    Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing unlawful food labeling claims without meeting the requirements to make them.

45.    Plaintiff did not know, and had no reason to know, that the Purchased Products were misbranded and bore food labeling claims despite failing to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that the Purchased Products were misbranded because their labeling was false and misleading.

VI.   **OVERVIEW OF APPLICABLE SHERMAN LAW VIOLATIONS**

   A.      <u>**Evaporated Cane Juice Claims**</u>

   46.     The following Purchased Products contain an "evaporated cane juice" claim:

- 365 Everyday Value Organic Chicken Broth (ECJ)
- 365 Everyday Value Tomato Ketchup (ECJ)
- 365 Everyday Value Organic Ketchup (ECJ)
- 365 Everyday Value Apple Cinnamon Instant Oatmeal (ECJ)

   47.     21 C.F.R. §§ 101.3, 101.4 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods and their component ingredients by anything other than their common and usual names.  There are also independent provisions of California law imposing parallel requirements that foods and ingredients to be identified by their common or usual names (California Health & Safety Code §§ 110720, 11725).

   48.     Defendants have violated these provisions by failing to use the common or usual name for ingredients mandated by law.

   49.     Defendants have violated the FDA's express policy with respect to the listing of certain ingredients such as sugar or dried sugar cane syrup.  As stated by the FDA "FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane juice' because that term falsely suggests that the sweeteners are juice."

   50.     The FDA "considers such representations to be false" and misleading under §403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 U.S.C. 102.5.

   51.     In October of 2009, the U. S. Food and Drug Administration issued Guidance for Industry: Ingredients Declared as Evaporated Cane Juice, which advised industry that:

   "…the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

   "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." …

"As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

"Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

"The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

"Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5.

52.     Despite the issuance of the 2009 FDA Guidance, Defendants did not remove the improper and misleading food labeling ingredients from the Purchased Products and Substantially Similar Products.

53.     In addition to the guidance to industry, the FDA has sent warning letters to industry, including many of Defendants' peer food manufacturers for the same types of improper claims described above.

54.     In these letters the FDA indicated that, as a result of the same types of claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR § 101)" and "misbranded within the meaning of section 403(r)(1)(A) because the product label bears a claim but does not meet the requirements to make the claim."

55.     The warning letters were hardly isolated as the FDA has issued other warning letters to other companies for the same type of food labeling claims at issue in this case.

56.     The FDA stated that the agency not only expected companies that received

warning letters to correct their labeling practices but also anticipated that other firms would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendants did not change the labels on the Purchased Products and Substantially Similar Products in response to these warning letters.

57.     Defendants also continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims. Defendants ignored this guidance as well and continued to utilize improper claims on the labels of the Purchased Products and Substantially Similar Products.  As such, the Purchased Products and Substantially Similar Products continue to run afoul of 2009 FOP Guidance as well as federal and California law.

58.     Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing improper food labeling claims without meeting the requirements to make them.

59.     Plaintiff did not know, and had no reason to know, that the Purchased Products were misbranded and bore food labeling claims despite failing to meet the requirements to make those food labeling claims. The "evaporated cane juice" and common name of ingredients and juice regulations discussed herein are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products. Plaintiff would not have bought these products had they been accurately labeled with all ingredients described by their common and usual name.

60.     Defendants label and distribute various products such as the 365 Everyday Value Organic Chicken Broth, 365 Everyday Value Tomato Ketchup and 365 Everyday Value Organic Ketchup bought by the Plaintiff, the labels of which misleadingly list "evaporated cane juice" as an ingredient.  Similarly, the Defendants label and distribute various products such as the 365 Everyday Value Apple Cinnamon Instant Oatmeal bought by the Plaintiff, the labels of which misleadingly list "evaporated cane juice solids" as an ingredient. According to the FDA, "evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup."  The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 CFR 168.130; the common or usual name for the solid or dried form of cane

syrup is 'dried cane syrup.'"  The labels of 365 Organic Everyday Value Chicken Broth, 365 Everyday Value Tomato Ketchup, 365 Everyday Value Organic Ketchup and 365 Everyday Value Apple Cinnamon Instant Oatmeal are reproduced in Exhibit 1 attached hereto.

61.     For these reasons, Defendants' labels at issue in this Complaint are misleading and violate 21 C.F.R. §§ 343 (a) and California law, and the products at issue are misbranded as a matter of law.  Misbranded products cannot be legally manufactured, advertised, distributed, held or sold and thus have no economic value and are legally worthless.  Plaintiff and the class paid a premium price for the Purchased Products and Substantially Similar Products.

**B.     "Natural" Claims**

62.     The following Purchased Products have an unlawful and misleading "natural" (or "Naturale") claim:

- 365 Everyday Value Cola ("Natural")
- 365 Everyday Value Ginger Ale  ("Natural")
- 365 Everyday Value Root Beer  ("Natural")
- Natural Italian Soda in green apple flavor ("Naturale")
- Natural Italian Soda in blood orange flavor ("Naturale")

63.     In its rule-making and warning letters to manufacturers, the FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic substances and flavors as provided in 21 C.F.R. § 101.22.

64.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.

65.     The FDA considers use of the term "natural" on a food label to be truthful and non-misleading when "nothing artificial or synthetic…has been included in, or has been added to, a food that would not normally be expected to be in the food."  *See* 58 FR 2302, 2407, January 6, 1993.

66.     Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.  Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

67.     The Defendants make numerous unlawful "all natural, "natural" and "naturale" claims on its products. For example, Defendants' labeling practices of its "all natural" and "natural" sodas violate the 2009 FOP Guidance Sec. 587.100, which states:  "[t]he use of the words 'food color added,' 'natural color,' or similar words containing the term 'food' or 'natural' may be erroneously interpreted to mean the color is a naturally occurring constituent in the food. Since all added colors result in an artificially colored food, we would object to the declaration of any added color as 'food' or 'natural.'"

68.     Likewise, California Health & Safety Code § 110740 prohibits the use of artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately disclosed on the labeling.

69.     The FDA has sent out numerous warning letters concerning this issue. Defendants are aware of these FDA warning letters.

70.     Defendants have unlawfully labeled some of its food products as being "All Natural," "Natural" or "Naturale" when they actually contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.  For example, Defendants' 365 Everyday Value Cola bought by the Plaintiff is represented to be "all natural" but contains caramel coloring, tartaric acid, citric acid and carbon dioxide.  Defendants' 365 Everyday Value Ginger Ale and Root Beer bought by the Plaintiff are represented to be "all natural" but contain caramel coloring, citric acid and carbon dioxide.  Similarly, Defendants sold the Natural Italian Soda in green apple and blood orange flavors bought by the Plaintiff, the labels of which misleadingly represented them as "natural" when they actually contain artificial ingredients such as citric acid or ascorbic acid used to preserve food and/or impart tart flavor to products that lack such flavor naturally. Defendants also sold the Whole Foods Market Natural Green Apple Italian Soda in green apple and blood orange flavors bought by the Plaintiff, the labels of which misleadingly represented them as "naturale" when they contained color additives such as beet or black carrot juices.

71.     The labels of Defendants' All Natural Soda and Bibita Naturale products are reproduced in Exhibit 1 attached hereto.

72.     21 C.F.R. § 70.3(f) makes clear that "where a food substance such as beet juice is

deliberately used as a color, as in pink lemonade, it is a color additive." Similarly, any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources. The FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

73. The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food. Any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.

74. A reasonable consumer would expect that when Defendants label and represent their products as "All Natural, "Natural," or "Naturale," the product's ingredients are "natural" as defined by the federal government and its agencies. A reasonable consumer would also expect that when Defendants label their products as "All Natural, "Natural," or "Naturale," the product ingredients are "natural" under the common use of that word. A reasonable consumer would understand that "natural" products do not contain synthetic, artificial, or excessively processed ingredients.

75. Consumers are thus misled into purchasing Defendants' products with ingredients that are not natural as falsely represented on their labeling. Defendants' products in this respect are misbranded under federal and California law. Plaintiff did not know, and had no reason to know, that the Purchased Products were misbranded, and bore natural claims despite failing to meet the requirements to make those natural claims. Plaintiff would not have bought these products had they been accurately labeled and disclosed the information required by law. Because of this improper manner in which ingredients were described, Plaintiff purchased Defendants' products and paid premiums for them.   Defendants have violated these referenced regulations and thus misled Plaintiff and the Class who were injured as a result and suffered economic loss.

### C.    "No Sugar Added" Claims

76. The following Purchased Products have an unlawful and misleading "no sugar

added" claim:

- 365 Everyday Value Whipped Topping

77.     Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims.  21 U.S.C. § 343(r)(1)(A).  California expressly adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

78.     Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the packaging in a font large enough to be read by the average consumer.  Because these claims are relied upon by consumers when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

79.     Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption.  *See* 21 C.F.R. § 101.13.

80.     An "express nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories").  *See* 21 C.F.R. § 101.13(b)(1).

81.     An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").  21 C.F.R. § 101.13(b)(2)(i-ii).

82.     FDA regulations authorize the use of a limited number of defined nutrient content claims. In addition, FDA's regulations authorize the use of only certain synonyms for these defined terms.  If a nutrient content claim or its synonym is not included in the food labeling regulations, it cannot be used on a label.  Only those claims, or their synonyms, that are specifically defined in the regulations may be used.  All other claims are prohibited.  21 CFR §101.13(b).

83.     Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food.  It should thus be clear which type of claim is prohibited and which permitted.  Food manufacturers are on notice that the use of an unapproved nutrient content claim is prohibited conduct.  58 FR 2302.  In addition, 21 USC §343(r)(2) prohibits using unauthorized undefined terms, and it declares foods that do so to be misbranded.

84.     Defendants have unlawfully made "No Sugar Added" nutrient content claims with respect to products like its 365 Everyday Value Whipped Topping product bought by the Plaintiff.

85.     Misbranded products cannot be legally sold under California Law.  *See* Cal. Health and Safety Code § 110760. Misbranded products cannot be legally sold under Federal Law. *See* 21 U.S.C. §§ 331, 333.

86.     Federal and California law regulates "no sugar added" claims as a particular type of nutrient content claim.  Specifically, 21 C.F.R. § 101.60 contains special requirements for nutrient claims that use the phrase "no sugar added."  Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements of 21 C.F.R. § 101.60 as its own. California Health & Safety Code § 110100.

87.     21 C.F.R. § 101.60(c)(2) provides in pertinent part, with emphasis added:

(2) The terms "no added sugar," "without added sugar," or "**no sugar added**" may be used only if:

(i) No amount of sugars, as defined in §101.9(c)(6)(ii), or any other ingredient that contains sugars that functionally substitute for added sugars is added during processing or packaging; and

(ii) The product does not contain an ingredient containing added sugars such as jam, jelly, or concentrated fruit juice; and

(iii) The sugars content has not been increased above the amount present in the ingredients by some means such as the use of enzymes, except where the intended functional effect of the process is not to increase the sugars content of a food, and a functionally insignificant increase in sugars results; and

(iv) The food that it resembles and for which it substitutes normally contains added sugars; and

(v) ***The product bears a statement that the food is not "low calorie" or "calorie reduced"*** (unless the food meets the requirements for a "low" or "reduced calorie" food) ***and that directs consumers' attention to the nutrition panel for further information on sugar and calorie content.***

79.     21 C.F.R. § 101.60(b)(2) provides that:

The terms "low-calorie," "few calories," "contains a small amount of calories," "low source of calories," or "low in calories" may be used on the label or in labeling of foods, except meal products as defined in § 101.13(l) and main dish products as defined in § 101.13(m), provided that: (i)(A) The food has a reference amount customarily consumed greater than 30 grams (g) or greater than 2 tablespoons and does not provide more than 40 calories per reference amount customarily consumed; or (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and does not provide more than 40 calories per reference amount customarily consumed and, except for sugar substitutes, per 50 g ….(ii) If a food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to vary the caloric content, it is labeled to clearly refer to all foods of its type and not merely to the particular brand to which the label attaches (e.g., "celery, a low-calorie food").

88.     In September 2007, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about unlawful sugar free type claims "that fail to bear the required disclaimer statement when these foods are not "low" or "reduced in" calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation." The letter stated:

Dear Manufacturer:

The Food and Drug Administration (FDA) is concerned about the number of products we have seen that contain claims regarding the absence of sugar, such as, "sugar free" but that fail to bear the required disclaimer statement when these foods are not "low" or "reduced in" calories or fail to bear the required disclaimer statement in the location or with the conspicuousness required by regulation. As part of our continuing effort to reduce the incidence of obesity in the United States, FDA wants to ensure that consumers are provided with the label information they need to make informed choices for maintaining a healthy diet. We are highlighting accurate claims about the absence of sugar as a regulatory priority. The agency intends to take appropriate action against products that we encounter that bear a claim about the absence of sugar (e.g., sugar free) but that fail to meet each of the requirements of the regulation that defines "sugar free." We intend to pay particular attention to those foods that are required to bear a disclaimer statement under the regulation that defines "sugar free," but that fail to do so or otherwise fail to comply with the regulation, 21 CFR 101.60(c). Therefore, we are taking this opportunity to remind food manufacturers and distributors of conventional food products that the definition of "sugar free" includes several requirements.

Under the authority of the Nutrition Labeling and Education Act of 1990, FDA issued regulations for the nutrient content claim "sugar free" 58 Federal Register (FR) 2302 at 2415. "Sugar free" is defined in Title 21 of the Code of Federal Regulations 101.60(c) …

FDA has historically taken the position that consumers may associate claims

regarding the absence of sugar with weight control and with foods that are low-calorie or that have been altered to reduce calories significantly. Therefore, the definition for "sugar free" includes the requirement that any food that is not low or reduced in calorie disclose that fact. Without such information some consumers might think the food was offered for weight control. See 56 FR 60421 at 60435. Consequently, the definition for "sugar free" includes the requirement that the food be labeled with the claim "low-calorie" or "reduced calorie" or bear a relative claim of special dietary usefulness labeled in compliance with 21 CFR 101.60(b)(2), (b)(3), (b)(4), or (b)(5) or such claim is immediately accompanied, each time it is used, by one of the following disclaimer statements: "not a reduced calorie food," "not a low-calorie food," or "not for weight control" (see 21 CFR 101.60(c)(1)(iii)). The disclaimer statement, when required, must accompany the claim each time it is used. In addition, the disclaimer statement is subject to the requirements of 21 CFR 101.2(c) and must appear prominently and conspicuously but in no case may the letters be less than one-sixteenth inch in height.

FDA encourages food manufacturers and distributors to review their labels and ensure that any food that bears a claim regarding the absence of sugar meet each of the requirements for that claim including the placement and conspicuousness of the disclaimer statement in 21 CFR 101.60(c)(1)(iii) when required. FDA will take appropriate action, consistent with our priorities and resources, when we find problems with the use of nutrient content claims regarding the absence of sugar in foods.

89.     The food industry ignored this FDA guidance and engaged in the exact labeling practices the FDA sought to eliminate.

90.     In addition to the industry guidance companies ignored, the FDA has repeatedly taken enforcement action and issued warning letters against several other companies addressing the type of misleading sugar free nutrient content claims described above.

91.     The enforcement actions and warning letters were hardly isolated, as the FDA has taken action against several other companies finding that the products were misbranded within the meaning of section 403 because the products' labels bore "sugar free" claims but did not meet the requirements to make such a claim.

92.     The food industry ignored the FDA's repeated enforcement actions and issuance of warning letters and continued to use unlawful sugar free claims on their product labels and in their advertising and marketing materials when they were prohibited from doing so.

93.     Defendants claim that their product 365 Everyday Value Whipped Topping has "No Sugar Added."

94. The labels of Defendants' 365 Everyday Value Whipped Topping products are reproduced in Exhibit 1 attached hereto.

95. Defendants' 365 Everyday Value Whipped Topping product does not satisfy element (v) of 21 C.F.R. § 101.60(c)(2) and is  therefore misbranded under federal and state law.

96. Notwithstanding the fact that 21 C.F.R. § 101.60(c)(2)(v) bars the use of the term "no sugar added" on foods that are not low-calorie unless they bear an express warning immediately adjacent to each use of the terms that discloses that the food is not "low calorie" or "calorie reduced," Defendants have touted their non low-calorie products as having "no sugar added" and chosen to omit the mandated disclosure statements.

97. In doing so, Defendants have ignored 21 C.F.R. § 101.60(c)(1), which states that:

98. Consumers may reasonably be expected to regard terms that represent that the food contains no sugars or sweeteners e.g., "sugar free," or "no sugar," as indicating a product which is low in calories or significantly reduced in calories.

99. Because consumers may reasonably be expected to regard terms that represent that the food contains "no sugar added" or sweeteners as indicating a product which is low in calories or significantly reduced in calories, consumers are misled when foods that are not low-calorie as a matter of law are falsely represented, through the unlawful use of phrases like "no sugar added" that they are not allowed to bear due to its high calorific levels and absence of mandated disclaimer or disclosure statements.

100. The labeling for Defendants' products violates California law and federal law.  For these reasons, Defendants' "no sugar added" claims at issue in this Complaint are misleading and in violation of 21 C.F.R. § 101.60(c)(2) and California law, and the product at issue is misbranded as a matter of law.  Misbranded products cannot be legally sold and thus have no economic value and are legally worthless.

101. Defendants are in violation despite numerous enforcement actions and warning letters pertaining to several other companies addressing the type of misleading sugar-related nutrient content claim described herein.

102. Plaintiff did not know, and had no reason to know, that Defendants' product was

1   misbranded, and bore nutrient content claims despite failing to meet the requirements to make

2   those nutrient content claims. Plaintiff would not have bought this product had it disclosed the

3   information required by law.

4       103.   Defendants' 365 Everyday Value Whipped Topping is  misbranded under federal

5   and California law as it contains disqualifying levels of calories that prohibit the claim from being

6   made absent a mandated disclosure statement warning of the higher caloric level of the products

7   and thus violates 21 CFR §101.60(c)(2).

8       104.   Because of this improper nutrient content claim, Plaintiff purchased this product

9   and paid a premium for it.  The nutrient content claims regulations discussed herein are intended

10   to ensure that consumers are not misled as to the actual or relative levels of nutrients in food

11   products.  Defendants have violated these referenced regulations.  .

12   **VII.   DEFENDANTS HAVE VIOLATED CALIFORNIA LAW**

13       105.   Defendants have violated California Health & Safety Code § 110390 which makes

14   it unlawful to disseminate false or misleading food advertisements that include statements on

15   products and product packaging or labeling or any other medium used to directly or indirectly

16   induce the purchase of a food product.

17       106.   Defendants have violated California Health & Safety Code § 110395 which makes

18   it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

19       107.   Defendants have violated California Health & Safety Code §§ 110398 and 110400

20   which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food

21   that has been falsely advertised.

22       108.   Defendants have violated California Health & Safety Code § 110660 because their

23   products' labeling are false and misleading in one or more ways.

24       109.   Defendants have violated California Health & Safety Code § 110665 because their

25   labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q)

26   and the regulations adopted thereto.

27       110.   Defendants have violated California Health & Safety Code § 110670 because their

28   labeling fails to conform with the requirements for nutrient content and health claims set forth in

21 U.S.C. § 343(r) and the regulations adopted thereto.

111.   Defendants have violated California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

112.   Defendants have violated California Health & Safety Code § 110725 as they fail to state the common or usual name of each ingredient.

113.   Defendants violated California Health & Safety Code § 110740 because they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

114.   Defendants have violated California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and its labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

115.   Defendants have violated California Health & Safety Code § 110760 which make it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

116.   Defendants have violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

117.   Defendants have violated California Health & Safety Code § 110770 which make it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

118.   Defendants have violated the standards set by 21 C.F.R. § 1.21, 101.3, 101.4, 101.13, 101.60, and 102.5 which have been incorporated by reference in the Sherman Law, by using terms unlawfully, failing to include on its product labels the nutritional information required by law and by utilizing unlawful labeling practices.

**VIII.   PLAINTIFF BOUGHT THE PURCHASED PRODUCTS**

122.    Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

123.    Plaintiff purchased the Purchased Products since 2008 and throughout during the Class Period.  Plaintiff has spent more than $25.00 on the Purchased Products.

119.    Plaintiff read and reasonably relied on the labels on the Purchased Products before purchasing them as described herein. Plaintiff relied on Defendants' labeling as described herein and based and justified the decision to purchase Defendants' products, in substantial part, on these labels.

125.    Plaintiff relied on Defendants' package labeling including the Ingredient, "EVAPORATED CANE JUICE" and the "natural" claims and "No Sugar Added" nutrient content claims, and the representation that products were free or artificial colors, preservatives or flavors and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling claims.

120.    At point of sale, Plaintiff did not know, and had no reason to know, that the Purchased Products were unlawful and misbranded as set forth herein, and would not have bought the products had he known the truth about them, including the fact that that the products were illegal to purchase and possess.

121.    After Plaintiff learned that Defendants' Purchased Products were falsely labeled, he stopped purchasing them.

128.    As a result of Defendants' unlawful conduct, Plaintiff and thousands of others in California and throughout the United States purchased the Purchased Products and the Substantially Similar Products at issue.

129.    Defendants' labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.   Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

130. A reasonable person would also attach importance to whether Defendants' products were legally salable, and capable of legal possession, and to Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendants' products had he known they were not capable of being legally sold or held.

122. Plaintiff's purchase of the Purchased Products damaged Plaintiff because misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.

123. Plaintiff's purchase of the Purchased Products damaged Plaintiff because Plaintiff paid an unwarranted premium for the Purchased Products when cheaper alternatives were available.

## IX.   CLASS ACTION ALLEGATIONS

124. Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States, and alternatively, in a subclass of consumers in California who, within the last four years, purchased any of the Purchased Products or Substantially Similar Products
>
> (1) containing "evaporated cane juice" as an ingredient;
>
> (2) labeled or advertised as "All Natural, " Natural," or "Naturale" despite containing artificial or unnatural ingredients, flavorings, coloring, and/or chemical preservatives;
>
> (3) labeled "No Sugar Added" but which (a) contained concentrated fruit juice and/or (b) provided more than 40 calories per reference amount customarily consumed but which failed to bear a statement (i) disclosing that the product was not "low calorie" or "calorie reduced" and (ii) directing consumers' attention to the nutrition panel for further information on sugar and calorie content;

125. The following persons are expressly excluded from the Class:  (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

126. This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

1    127.   <u>Numerosity</u>:  Based upon Defendants' publicly available sales data with respect to

2  the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that

3  joinder of all Class members is impracticable.

4    128.   <u>Common Questions Predominate</u>:  This action involves common questions of law

5  and fact applicable to each Class member that predominate over questions that affect only

6  individual Class members.  Thus, proof of a common set of facts will establish the right of each

7  Class member to recover.  Questions of law and fact common to each Class member include, just

8  for example:

9       a.   Whether Defendants engaged in unlawful, unfair or deceptive business
10           practices by failing to properly package and label products sold to
             consumers;

11      b.   Whether the food products at issue were misbranded or unlawfully
12           packaged and labeled as a matter of law;

13      c.   Whether the Defendants made unlawful and misleading "all natural" or
             "natural" or "naturale" claims;

14      d.   Whether the Defendants failed to use the common or usual name of all its
15           products' ingredients and instead utilized the unlawful and misleading
             term "evaporated cane juice;"

16      e.   Whether Defendants made unlawful and misleading "no sugar added"
17           claims with respect to their food products sold to consumers;

18      f.   Whether Defendants made unlawful and misleading express or implied
             nutrient content claims with respect to their food products sold to
19           consumers;

20      g.   Whether Defendants made unlawful and misleading representations that its
             products were free from artificial colors, flavors or preservatives

21      h.   Whether Defendants failed to adequately disclose the calorie or sugar
22           content of its food products sold to consumers;

23      i.   Whether Defendants violated California Bus. & Prof. Code § 17200 *et
             seq.*, California Bus. & Prof. Code § 17500 *et seq.*, the California
             Consumers Legal Remedies Act, Cal. Civ. Code. § 1750 *et seq.*, and the
24           Sherman Law;

25      j.   Whether Plaintiff and the Class are entitled to equitable and/or injunctive
             relief;
26
27      k.   Whether Defendants' unlawful, unfair and/or deceptive practices harmed
             Plaintiff and the Class; and

28      l.   Whether Defendants were unjustly enriched by its deceptive practices.

129.   <u>Typicality</u>:   Plaintiff's claims are typical of the claims of the Class because Plaintiff bought the Purchased Products during the Class Period.   Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.   Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct in violation of California law.   The injuries of each member of the Class were caused directly by Defendants' wrongful conduct.   In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.   Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

130.   <u>Adequacy</u>:   Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.   Plaintiff has retained highly competent and experienced class action attorneys to represent his interests and those of the members of the Class.   Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

131.   <u>Superiority</u>:   There is no plain, speedy or adequate remedy other than by maintenance of this class action.   The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendants and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties.   Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that numerous individual actions would engender.   Further, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them, while an

1  important public interest will be served by addressing the matter as a class action. Class treatment

2  of common questions of law and fact would also be superior to multiple individual actions or

3  piecemeal litigation in that class treatment will conserve the resources of the Court and the

4  litigants, and will promote consistency and efficiency of adjudication.

5        132.  The prerequisites to maintaining a class action for injunctive or equitable relief

6  pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds

7  generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

8  with respect to the Class as a whole.

9        133.  The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

10  are met as questions of law or fact common to class members predominate over any questions

11  affecting only individual members, and a class action is superior to other available methods for

12  fairly and efficiently adjudicating the controversy.

13        134.  Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be

14  encountered in the management of this action that would preclude its maintenance as a class

15  action.

16  **X.    CAUSES OF ACTION**

17                                  **FIRST CAUSE OF ACTION**
                     **Business and Professions Code § 17200, *et seq.***

18                       **Unlawful Business Acts and Practices**

19        135.  Plaintiff incorporates by reference each allegation set forth above.

20        136.  Defendants' conduct constitutes unlawful business acts and practices.

21        137.  Defendants sold the Purchased Products and Substantially Similar Products in

22  California and throughout the United States during the Class Period.

23        138.  Defendants are corporations and a limited partnership and, therefore, each is a

24  "person" within the meaning of the Sherman Law.

25        139.  Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

26  Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the

27  misbranded food provisions of Article 6 of the Sherman Law.

28        140.  Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

1   Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

2       141.   Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of

3   Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

4       142.   Defendants sold Plaintiff and the Class products that were not capable of being

5   sold, or held legally and which had no economic value and were legally worthless for which

6   Plaintiff and the class paid a premium price for these products.

7       143.   As a result of Defendants' illegal business practices, Plaintiff and the Class,

8   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

9   conduct and such other orders and judgments which may be necessary to disgorge Defendants'

10  ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products

11  and Substantially Similar Products.

12      144.   Defendants' unlawful business acts present a threat and reasonable continued

13  likelihood of injury to Plaintiff and the Class.

14      145.   As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business

15  and Professions Code § 17203, are entitled to an order enjoining such future conduct by

16  Defendants, and such other orders and judgments which may be necessary to disgorge

17  Defendants' ill-gotten gains and restore any money paid by Plaintiff and the Class for

18  Defendants' Purchased Products and Substantially Similar Products.

19                          **SECOND CAUSE OF ACTION**
                    **Business and Professions Code § 17200, *et seq.***
20                        **<u>Unfair Business Acts and Practices</u>**

21      146.   Plaintiff incorporates by reference each allegation set forth above.

22      147.   Defendants' conduct as set forth herein constitutes unfair business acts and

23  practices.

24      148.   Defendants sold the Purchased Products and Substantially Similar Products in

25  California and throughout the United States during the Class Period.

26      149.   Plaintiff and members of the Class suffered a substantial injury by virtue of buying

27  Defendants' Purchased Products and Substantially Similar Products that they would not have

28  purchased absent Defendants' illegal conduct.

150.   Defendants' deceptive marketing, advertising, packaging and labeling of the Purchased Products and Substantially Similar Products and their sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

151.   Defendants sold the Purchased Products and Substantially Similar Products that were not capable of being legally sold or held and that had no economic value and were legally worthless.   Plaintiff and the Class paid a premium price for the Purchased Products and Substantially Similar Products .

152.   Plaintiff and the Class who purchased the Purchased Products and Substantially Similar Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

153.   The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor.   Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

154.   As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Purchased Products and Substantially Similar Products by Plaintiff and the Class.

### THIRD CAUSE OF ACTION
#### Business and Professions Code § 17200, *et seq.*
#### Fraudulent Business Acts and Practices

155.   Plaintiff incorporates by reference each allegation set forth above.

156.   Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

157.   Defendants sold the Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

158.   Defendants' misleading marketing, advertising, packaging and labeling of the Purchased Products and Substantially Similar Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.  Defendants have engaged in fraudulent business acts and practices.

159.   Defendants' fraud and deception caused Plaintiff and the Class to purchase the Purchased Products and Substantially Similar Products that they would otherwise not have purchased had they known the true nature of those products.

160.   Defendants sold Plaintiff and the Class the products that were not capable of being sold or held legally and that had no economic value and were legally worthless for which Plaintiff and the Class paid a premium price.

161.   As a result of Defendants' conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Purchased Products and Substantially Similar Products by Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**Misleading and Deceptive Advertising**

162.   Plaintiff incorporates by reference each allegation set forth above.

163.   Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500*, et seq.* for misleading and deceptive advertising against Defendants.

164.   Defendants sold the Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

165.   Defendants engaged in a scheme of offering the Purchased Products and Substantially Similar Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling.  These materials misrepresented and/or omitted the true contents and nature of the products.  Defendants' advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as

1    contained in Business and Professions Code §17500, *et seq.* in that such product packaging and

2    labeling were intended as inducements to purchase the products and are statements disseminated

3    by Defendants to Plaintiff and the Class that were intended to reach members of the Class.

4    Defendants knew, or in the exercise of reasonable care should have known, that these statements

5    were misleading and deceptive as set forth herein.

6    166.    In furtherance of its plan and scheme, Defendants prepared and distributed within

7    California and nationwide via product packaging and labeling statements that misleadingly and

8    deceptively represented the composition and the nature of the products.  Plaintiff and the Class

9    necessarily and reasonably relied on Defendants' materials, and were the intended targets of such

10   representations.

11   167.    Defendants' conduct in disseminating misleading and deceptive statements in

12   California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable

13   consumers by obfuscating the true composition and nature of the Purchased Products and

14   Substantially Similar Products in violation of the "misleading prong" of California Business and

15   Professions Code § 17500, *et seq*.

16   168.    As a result of Defendants' violations of the "misleading prong" of California

17   Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the

18   expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held and thus

19   have no economic value and are legally worthless.  Plaintiff and the Class paid a premium price

20   for the Purchased Products and Substantially Similar Products.

21   169.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

22   entitled to an order enjoining such future conduct by Defendants, and such other orders and

23   judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any

24   money paid for the Purchased Products and Substantially Similar Products by Plaintiff and the

25   Class.

26
**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq*.**
27
**Untrue Advertising**

28   170.    Plaintiff incorporates by reference each allegation set forth above.

171.   Plaintiff asserts this cause of action against Defendants for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

172.   Defendants sold the Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

173.   Defendants engaged in a scheme of offering the Purchased Products and Substantially Similar Products for sale to Plaintiff and the Class by way of product packaging and labeling.   These materials misrepresented and/or omitted the true contents and nature of the Purchased Products and Substantially Similar Products.   Defendants' advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling were intended as inducements to purchase the Purchased Products and Substantially Similar Products, and are statements disseminated by Defendants to Plaintiff and the Class.   Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

174.   In furtherance of its plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling statements that falsely advertise the composition of the Purchased Products and Substantially Similar Products, and falsely misrepresented the nature of those products.   Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

175.   Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of the Purchased Products and Substantially Similar Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

176.   As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.   Misbranded products cannot be legally sold or held and thus have no economic value and are legally worthless.   Plaintiff and the Class paid a premium price for the Purchased Products and Substantially Similar Products.

177.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for the Purchased Products and Substantially Similar Products by Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**
**Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

178.   Plaintiff incorporates by reference each allegation set forth above.

179.   This cause of action is brought pursuant to the CLRA.  This cause of action does not currently seek monetary damages and is limited solely to injunctive relief.  Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

180.   At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

181.   Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendants for their violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

182.   Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

183.   Defendants sold the Purchased Products and Substantially Similar Products in California and throughout the United States during the Class Period.

184.   Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

185.   The Purchased Products and Substantially Similar Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

186.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Sections 1770(a)(5) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

187.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

188.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it advertises goods with the intent not to sell the goods as advertised.

189.   By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that it represents that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

190.   Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

191.   Plaintiff incorporates by reference each allegation set forth above.

192.   As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sales of the Purchased Products and Substantially Similar Products, Defendants

1    were enriched at the expense of Plaintiff and the Class.

2          193.    Defendants sold of the Purchased Products and Substantially Similar Products to

3    Plaintiff and the Class that were not capable of being sold or held legally and which had no

4    economic value and were legally worthless.  It would be against equity and good conscience to

5    permit Defendants to retain the ill-gotten benefits it received from Plaintiff and the Class, in light

6    of the fact that the products were not what Defendants purported them to be.  Thus, it would be

7    unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiff and the

8    Class of all monies paid to Defendants for the products at issue.

9          194.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class

10   have suffered damages in an amount to be proven at trial.

11   **XI.    JURY DEMAND**

12          Plaintiff hereby demands a trial by jury of his claims.

13   **XII.    PRAYER FOR RELIEF**

14          WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on

15   behalf of the general public, prays for judgment against Defendants as follows:

16          A.      For an order certifying this case as a class action and appointing Plaintiff and his

17   counsel to represent the Class;

18          B.      For an order awarding, as appropriate, damages, restitution or disgorgement to

19   Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek

20   monetary relief under the CLRA, but intends to amend his Complaint to seek such relief;

21          C.      For an order requiring Defendants to immediately cease and desist from selling the

22   Purchased Products and Substantially Similar Products in violation of law; enjoining Defendants

23   from continuing to market, advertise, distribute, and sell these products in the unlawful manner

24   described herein; and ordering Defendants to engage in corrective action;

25          D.      For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

26          E.      For an order awarding attorneys' fees and costs;

27          F.      For an order awarding punitive damages;

28          G.      For an order awarding pre-and post-judgment interest; and

AMENDED CLASS ACTION COMPLAINT                                                          38
CASE NO CV12-05652 (EJD)

1        H.        For an order providing such further relief as this Court deems proper.

2

3    Dated:  May 2, 2013.                    Respectfully submitted,

4                                                      /s/
                                                  Pierce Gore (SBN 128515)
5                                                 PRATT & ASSOCIATES
                                                  1871 The Alameda
6                                                 Suite 425
                                                  San Jose, CA 95126
7                                                 Telephone:  (408) 429-6506
                                                  pgore@prattattorneys.com
8
                                                  *Attorneys for Plaintiff*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28