1  Pierce Gore (SBN 128515)
   PRATT & ASSOCIATES
2  1871 The Alameda, Suite 425
   San Jose, CA 95126
3  (408) 429-6506
   pgore@prattattorneys.com
4
   *Attorney for Plaintiff*
5

6                    UNITED STATES DISTRICT COURT

7                   NORTHERN DISTRICT OF CALIFORNIA

8                         SAN JOSE DIVISION

9

10
   ROBERT PLATT, individually and on behalf        Case No. CV 12-05652 (EJD)
11 of all others similarly situated,

12              Plaintiff,                          **PLAINTIFF'S MEMORANDUM IN
                                                    OPPOSITION TO DEFENDANTS'
13 v.                                               MOTION TO DISMISS THE AMENDED
                                                    COMPLAINT AND MOTION TO
14 WHOLE FOODS MARKET CALIFORNIA,                   STRIKE**
   INC.; MRS GOOCH'S NATURAL FOODS
15 MARKET, INC.; WFM-WO, INC.; and WFM
   PRIVATE LABEL, L.P.,                             Date:      October 11, 2013
16                                                  Time:      9:00 a.m.
              Defendants.                           Judge:     Hon. Edward J. Davila
17                                                  Courtroom: Courtroom 4, 5th Floor

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

STATEMENT OF THE ISSUES TO BE DECIDED .................................................... viii

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

SUMMARY OF THE CASE ............................................................................................ 1

BACKGROUND & FACTUAL ALLEGATIONS ........................................................ 1

PLAINTIFF PROPERLY AMENDED THE ORIGINAL COMPLAINT ..................... 3

ARGUMENT .................................................................................................................... 3

I.      Legal Standards ................................................................................................. 3

II.     Plaintiff's Claims Are Not Preempted .......................................................... 4

        A.      There Is A Strong Presumption Against Preemption ........................... 4

        B.      There Is No Implied Preemption ........................................................... 5

        C.      There Is No Express Preemption ........................................................... 7

III.    The Primary Jurisdiction Doctrine Is Inapplicable ...................................... 12

IV.     Plaintiff's AC Alleges Plausible False Advertising Claims ........................ 15

        A.      The AC States a Claim Under the UCL, FAL, and CLRA ................. 15

        B.      A Reasonable Consumer Would Be Deceived By The Challenged
                Statements ............................................................................................ 19

        C.      Plaintiff Has Adequately Alleged Reliance, Causation and Injury ....... 20

V.      The AC Complies With Rule 9(b) ................................................................. 22

VI.     The Request For Injunctive Relief Is Proper .............................................. 24

VII.    Plaintiff Has Stated A Claim For Unjust Enrichment .................................. 25

CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Aho v. Americredit Fin. Servs.*,
    277 F.R.D. 609 (S.D. Cal. 2011)................................................................ 21

*Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*,
    69 F.3d 381 (9th Cir. 1995).................................................................... 4

*Altria Group, Inc. v. Good*,
    555 U.S. 70 (2008)............................................................................ 4

*Appalachian Power Co. v. E.P.A.*,
    208 F.3d 1015 (D.C. Cir. 2000) .......................................................... 8, 9

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ..................................................................... 3, 4

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2011 WL 2111796 (N.D. Cal. May 26, 2011) ........................................ 17, 21

*Astiana v. Dryer's Grand Ice Cream Inc.*,
    2012 WL 2990766 (N.D. Cal. July 20, 2012)........................................... 10

*Auer v. Robbins*,
    519 U.S. 452 (1997)......................................................................... 9

*Baas v. Dollar Tree Stores, Inc.*,
    2007 WL 2462150 (N.D. Cal. Aug. 29, 2007)........................................... 23

*Bassiri v. Xerox Corp.*,
    463 F.3d 927 (9th Cir. 2006)............................................................... 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).................................................................... 3, 4

*Briseno v. Conagra Foods, Inc.*,
    2011 U.S. Dist. LEXIS 154750 (C.D. Cal. Nov. 23, 2011) .......................... 17

*Campion v. Old Republic Home Protections Co.*,
    861 F. Supp. 2d 1139 (S.D. Cal. Mar. 23, 2012) .................................... 25

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) ................................................................... 17

*Chabner v. United Omaha Life Ins. Co.*,
    225 F.3d 1042 (9th Cir. 2000)........................................................... 17

*Chavez v. Blue Sky Natural Beverage Co.*,
    340 Fed. App'x 359 (9th Cir. 2009)..................................................... 21

*Chavez v. Nestle USA, Inc.*,
    511 Fed. Appx. 606 (9th Cir. 2013) .................................................... 13

*Clancy v. The Bromley Tea Co.*,
2013 WL 4081632 (N.D. Cal. Aug. 9, 2013) ........................................................ 6

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir. 2008) ........................................................................ 12

*Colucci v. Zoneperfect Nutrition Co.*,
2012 WL 6737800 (N.D. Cal. Dec. 28, 2012) ................................................... 16

*Consumer Advocates v. Echostar Satellite Corp.*,
113 Cal. App. 4th 1351 (2003) ....................................................................... 18

*County of Santa Clara v. Astra USA, Inc.*,
588 F.3d 1237 (9th Cir. 2009) ........................................................................ 13

*Cox v. Gruma Corp.*,
2013 WL 3828800 (N.D. Cal. July 11, 2013) .................................................... 14

*Delacruz v. Cytosport, Inc.*,
2012 WL 2563857 (N.D. Cal. June 28, 2012) ................................................... 19

*Erickson v. Pardus*,
551 U.S. 89, 127 S.Ct. 2197 L.Ed.2d 1081 (2007) ............................................ 4

*Finuliar v. BAC Home Loans Servicing, L.P.*,
2011 U.S. Dist. LEXIS 107324 (N.D. Cal. Sep. 21, 2011) ................................. 17

*Frezza v. Google Inc.*,
2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr. 22, 2013) .................................. 21

Galvan v. KDI Distrib.,
2011 U.S. Dist. LEXIS 127602 (C.D. Cal. Oct. 25, 2011) .................................. 20

*Gest v. Bradbury*,
443 F.3d 1177 (9th Cir. 2006) ........................................................................ 24

*Henderson v. Gruma Corp.*,
2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) .............................................. 17, 24

*In re Farm Raised Salmon Cases*,
42 Cal. 4th 1077 (2008) ............................................................................. 4, 5

*In re Ferrero Litig.*,
794 F. Supp. 2d 1107 (S.D. Cal. 2011) ............................................................ 4

*In re Steroid Hormone Product Cases*,
181 Cal. App. 4th 145 (2010)......................................................................... 22

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ................................................................................. 16

*Ivie v. Kraft Foods Global, Inc.*,
2013 WL 3296616 (N.D. Cal. June 28, 2013) ........................................... 9, 10, 13

*Jones v. ConAgra Foods, Inc.*,
    912 F. Supp. 2d 889 (N.D. Cal. 2012) ........................................................... 5, 22

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................ 15

*Khasin v. Hershey Co.*,
    2012 WL 5471153 (N.D. Cal. Nov. 9, 2012) ........................................... *passim*

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ....................................................................... 19

*Koehler v. Litehouse, Inc.*,
    2012 WL 6217635 (N.D. Cal. Dec.13, 2012) .................................................. 24

*Kosta v. Del Monte Corp.*,
    2013 WL 2147413 (N.D. Cal., May 15, 2013) ............................................ 5, 13

*Kwikset Corporation v. Superior Court of Orange County*,
    51 Cal. 4th 310 (2011) ................................................................................... 24

*Larsen v. Trader Joe's Co.*,
    2012 WL 5458396 (N.D. Cal. June 14, 2012) ................................................ 25

*Larsen v. Trader Joe's Co.*,
    917 F. Supp. 2d 1019 (N.D. Cal. 2013) .......................................................... 12

*Linear Technology v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) ......................................................................... 17

*Lockwood v. Conagra Foods, Inc.*,
    597 F. Supp. 2d 1028 (N.D. Cal. 2009) .......................................................... 14

*Medrazo v. Honda of North Hollywood*,
    205 Cal. App. 4th 1 (2012) ............................................................................. 16

*Morgan v. AT&T Wireless Servs., Inc.*,
    177 Cal. App. 4th 1235 (2009) ....................................................................... 18

*Olivera v. American Home Mortg. Servicing, Inc.*,
    689 F. Supp. 2d 1218 (N.D. Cal. 2010) .......................................................... 20

*Paulus v. Bob Lynch Ford, Inc.*,
    139 Cal. App. 4th 659 (2006) ......................................................................... 17

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*,
    104 Cal. App. 4th 508 (2002) ......................................................................... 15

*Perez v. Nidek*,
    711 F.3d 1109 (9th Cir. 2013) .......................................................................... 5

*Pom Wonderful v. Coca-Cola Co.*,
    679 F.3d 1170 (9th Cir. 2012) .......................................................................... 5

*Public Lands for the People, Inc. v. United States Dep't of Agric.*,
    697 F.3d 1192 (9th Cir. 2012).................................................................................. 9

*Rand v. Am. Nat'l Ins. Co.*,
    2010 U.S. Dist. LEXIS 82584 (N.D. Cal. June 22, 2010) ................................. 21

*Ries v. Arizona Beverages USA LLC*,
    287 F.R.D. 523 (N.D. Cal. 2012).............................................................. 24

*Rubio v. Capital One Bank*,
    613 F.3d 1195 (9th Cir. 2010)................................................................. 15

*Samet v. Procter & Gamble Co.*,
    2013 WL 3124647 (N.D. Cal. June 18, 2013) ............................................ 6, 13

*Semegen v. Weidner*,
    780 F.2d 727 (9th Cir. 1985)................................................................. 23

*Smith v. Cabot Creamery Coop., Inc.*,
    2013 U.S. Dist. LEXIS 25617 (N.D. Cal. Feb. 25, 2013)................................. 9

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011)................................................................ 22

*Stengel v. Medtronic Incorporated*,
    704 F.3d 1224 (9th Cir. 2013)............................................................... 4, 5

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007)................................................................. 23

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
    307 F.3d 775 (9th Cir. 2002)................................................................. 13

*Trazo v. Nestle USA, Inc.*,
    2013 WL 4083218 (N.D. Cal. Aug. 9, 2013)........................................... 6, 13, 16

*Vanscoter v. Sullivan*,
    920 F.2d 1441 (9th Cir. 1990)................................................................. 9

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)............................................................. 22, 23

*Von Kaenel v. Skinny Girl Cocktails, LLC*,
    2:11-cv-07305, Docket No. 66, 3/19/12 Order (C.D. Cal. Mar. 19, 2012)...................... 22

*Von Koenig v. Snapple Beverage Corp.*,
    713 F. Supp. 2d 1066 (E.D. Cal. 2010)..................................................... 17

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*,
    178 F. Supp. 2d 1099 (C.D. Cal. 2001).................................................... 18

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008)......................................................... 4, 17, 18, 21

*Wilson v. Frito-Lay N. Am., Inc.*,
    2013 WL 1320468 (N.D. Cal. Apr. 1, 2013) ................................................................ 5, 9

*Wyeth v. Levine*,
    555 U.S. 555 (2009) ..................................................................................................... 4

**Statutes**

15 U.S.C. § 1452 ........................................................................................................... 19

21 U.S.C. § 301 .............................................................................................................. 1

21 U.S.C. § 321 (n) ...................................................................................................... 19

21 U.S.C. § 343 (a)(1) .................................................................................................... 7

21 U.S.C. § 343-1 ......................................................................................................... 10

Cal. Bus. & Prof. Code § 17200 .............................................................................. 1, 15

Cal. Health & Safety Code § 110670 ......................................................................... 19

Cal. Health & Safety Code § 110725 ........................................................................... 3

**Other Authorities**

2009 FDA *Guidance for Industry: Ingredients Declared as Evaporated Cane Juice, Draft
    Guidance* ................................................................................................................... 7

58 Fed. Reg. 2302 (January 6, 1993) .................................................................... 11, 14

Stern, § 5.166, BUS. & PROF. C. § 17200 PRACTICE
    (The Rutter Group 2012) ......................................................................................... 16

Warning letter to Alexia Foods, Inc.
    (November 16, 2011) ................................................................................................ 12

Warning Letter to Bob's Red Mill Natural Foods
    (July 31, 2012) ........................................................................................................... 8

Warning Letter to Hail Merry, LLC
    (October 23, 2012) ..................................................................................................... 8

Warning Letter to Hato Portrero Farm, Inc.
    (April 3, 2008) ............................................................................................................ 8

Warning Letter to Oak Tree Farm Dairy, Inc.
    (August 16, 2001) ..................................................................................................... 11

**Rules**

Fed. R. Civ. P. 15(a)(2) ................................................................................................. 3

Fed. R. Civ. P. 8(e)(2) ................................................................................................... 4

Fed. R. Civ. P. 9(b) ........................................................................................................ 23

**Regulations**

21 C.F.R. § 101 ............................................................................................................... 8

21 C.F.R. § 102.5 ............................................................................................................ 7

21 C.F.R. § 343(a) ........................................................................................................... 3

1

## STATEMENT OF THE ISSUES TO BE DECIDED

2

       1.      Did Plaintiff properly amend the original complaint?

3

       2.      Does a preemption provision that expressly preempts only state requirements "that [are] not identical to" the federal requirements imply that Congress also

4

intended to preempt state requirements that are identical to the federal requirements?

5

       3.      When a product label is misleading under FDA regulations and California law, can a court say, as a matter of law, that it is not plausible that a reasonable consumer would

6

be misled by and detrimentally rely on the misleading label?

7

       4.      When a product label is misleading under FDA regulations and California law, can a court say, as a matter of law, that it is not plausible that Plaintiffs were misled by and

8

detrimentally relied on the misleading label?

9

       5.      Is dismissal under the doctrine of primary jurisdiction appropriate where there is no allegation of a pending agency enforcement action and the case does not involve issues

10

of first impression?

11

       6.      Is a claim for "Restitution Based on Unjust Enrichment/Quasi Contract" subject to dismissal for failure to state a claim on the theory that it is duplicative of other claims

12

or based on Defendant's false assertion that its labels fully complied with the applicable regulations?

13

       7.      Did Plaintiff comply with Rule 9(b)?

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Robert Platt ("Plaintiff") submits this memorandum in opposition to Defendants' combined motion to dismiss and motion to strike (Dkt. 29).

## SUMMARY OF THE CASE

This case seeks to recover for the injuries suffered by the Plaintiff as a direct result of (1) the Defendants' unlawful sale of misbranded food products and (2) Defendants' misleading labels.  To summarize, there are two distinct facets of this case.

First, Defendants' actions violate the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  Defendants packaged and labeled their food products in violation of California's Sherman Law which adopts, incorporates, and is, in all relevant aspects, identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA") and the regulations adopted pursuant to that act.  These violations render Defendants' food products "misbranded."  Under California law, misbranded food products cannot be legally sold or possessed, have no economic value and are legally worthless.  Indeed, the sale or possession of misbranded food products is a criminal act in California.  By selling such illegal products to the unsuspecting public, including Plaintiff, the Defendants profited at the Plaintiffs' expense and unlawfully deprived Plaintiffs of the money they paid to purchase food products that were illegal to sell, possess or resell and had no economic value.  This facet of the case does not "sound in fraud."

Second, Plaintiff brings separate fraud claims because he purchased products due in substantial part to Defendants' misleading and deceptive labels.  Prior to purchase, Plaintiff reviewed the misleading statements on each of the labels of the products at issue and reasonably relied, in substantial part, on these statements in making his purchases.  Importantly, Defendants' motion focuses virtually exclusively on the *misleading* aspect of the case and ignores the misbranded part of the case altogether.  Defendant just said nothing.

## BACKGROUND & FACTUAL ALLEGATIONS

Plaintiff filed his original complaint on November 2, 2012 (Dkt. 1) and his Amended Complaint ("AC") on May 2, 2013 (Dkt. 21).  In the AC, Plaintiff specifically listed the nine

products purchased by the Plaintiff in the class period at issue in the case:

1. 365 Everyday Value Organic Chicken Broth
2. 365 Everyday Value Tomato Ketchup
3. 365 Everyday Value Organic Ketchup
4. 365 Everyday Value Apple Cinnamon Instant Oatmeal
5. 365 Everyday Value Cola
6. 365 Everyday Value Ginger Ale
7. 365 Everyday Value Root Beer
8. Natural Italian Soda in green apple flavor
9. Natural Italian Soda in blood orange flavor[1]

Although there are 9 products in this case, there are essentially only two claims:  (1) "evaporated cane juice" (hereafter, "ECJ") claims and (2) "natural" claims.  The AC describes how products 1-4 above list either evaporated cane juice or evaporated cane juice solids as ingredients:  365 Everyday Value Organic Chicken Broth ("*cane juice solids*"), 365 Everyday Value Tomato Ketchup ("*evaporated cane juice*"), 365 Everyday Value Organic Ketchup ("*evaporated cane juice*"), and 365 Everyday Value Apple Cinnamon Instant Oatmeal ("*evaporated cane juice solid*s").  AC ¶ 60.  Plaintiff alleges that these statements render the products misbranded on one hand and misleading on the other.

The AC also describes Plaintiff's natural claim in detail.  The AC describes how products 5-9 above (cola, ginger ale, root beer, green apple Italian soda, and blood orange Italian soda) use the terms "natural" or "naturale" (AC ¶¶ 62, 70) despite all containing unnatural and artificial ingredients.  AC ¶ 70.  Like the evaporated cane juice claim, Plaintiff alleges that these natural statements render the products misbranded on one hand and misleading on the other.

Defendants move to dismiss the AC on the same grounds that have been rejected repeatedly by courts in this District.  Defendants claim (1) preemption, (2) primary jurisdiction, (3) Plaintiff has not pleaded any violations of food labeling law, (4) Plaintiff cannot plausibly plead reliance, (5) Plaintiff cannot plausibly plead injury, and (6) failure to plead with particularity under Rule 9(b).  Def.'s Memo at 1.  As discussed below, these arguments have no merit and the motion should be denied.

---

[1]Plaintiff listed ten (10) purchased products in the AC and made allegations regarding "substantially similar products."  AC ¶¶ 2-3.  The parties have stipulated that (1) Plaintiff Pratt's claims pertaining to Everyday Value Whipped Topping as well as the "substantially similar products" are dismissed with prejudice and (2) the same claims held by putative class members are dismissed without prejudice.

**PLAINTIFF PROPERLY AMENDED THE ORIGINAL COMPLAINT**

Fed. R. Civ. P. 15(a)(2) allows a party to "amend its pleading only with the opposing party's written consent." As correctly noted by Defendants, the parties entered into a stipulation allowing Plaintiff to amend (*see* Dkt. 20), and thus, Plaintiff's amendment is proper.

Defendants argue that Plaintiff has revised his substantive allegations and claims in his Amended Complaint ("AC"), in violation of the agreed stipulation allowing Plaintiff to amend, but Defendants fail to identify what allegations have been "significantly revised." Def.'s Memo at 4. Defendants cannot identify these "revisions" because Plaintiff simply amended his complaint pursuant to the agreed stipulation (to withdraw the Whole Market Foods, Inc. defendant) and merely clarified his facts and causes of action against Defendants. Plaintiff did not add any products or additional claims against Defendants, nor did Plaintiff change his theory of liability against Defendants. In fact, in his AC, Plaintiff removed his "No Artificial Flavors, Colors or Preservatives" claims and his Song-Beverly Act and Magnuson-Moss Act causes of action, which in no way prejudices Defendants. The remaining allegations contained in the Complaint and AC remain the same.

Plaintiff did add one additional violation of California law, California Health & Safety Code § 110725 (failing to state the common or usual name of an ingredient) (AC ¶ 112), but this is nothing new. In his initial complaint, Plaintiff stated that Defendants' use of the term "evaporated cane juice" was unlawful and misleading because it is not the common name for "sugar," and therefore violated 21 C.F.R. § 343(a) and *California law.* (Dkt. 1, ¶ 55). Plaintiff's AC simply identifies the corresponding California law which is being violated by Defendants.

**ARGUMENT**

I.    **Legal Standards**

In considering a motion to dismiss, all allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A complaint need only allege sufficient facts to show "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Review is limited to the contents of the complaint. *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.,* 69 F.3d 381,

385 (9th Cir. 1995). Federal Rule of Civil Procedure 8(a) requires only that the complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary—the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

Any plausibility analysis is "context-specific," and courts are advised to draw upon "judicial experience and common sense" in applying it. *Iqbal*, 129 S.Ct. at 1950. However, assessing plausibility does not involve analysis of the merits. *Twombly*, 550 U.S. at 556-57. "[I]t is a 'rare situation' where granting a motion to dismiss claims under the UCL is appropriate." *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011). "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).

## II.  **Plaintiff's Claims Are Not Preempted**

### A.  **There Is A Strong Presumption Against Preemption**

Defendant argues this case should be dismissed on preemption grounds.  Defendant faces a steep climb from the start, however, because there is a strong "presumption against preemption" recognized by the United States Supreme Court in *Wyeth v. Levine*, 555 U.S. 555, 565 n.3 (2009).  *See also*, *Stengel v. Medtronic Incorporated*, 704 F.3d 1224, 1227-1228 (9th Cir. 2013) ("Parties seeking to invalidate a state law based on preemption 'bear the considerable burden of overcoming 'the starting presumption that Congress does not intend to supplant state law.''").  Further, the "historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Altria Group, Inc. v. Good*, 555 U.S. 70, 77 (2008) (emphasis added).   In cases like this, courts have clearly held that laws regulating "the proper marketing of food, including the prevention of deceptive sales practices, are . . . within states' historic police powers."  *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1088 (2008).  Defendants cannot overcome this high burden.

1

### B.    There Is No Implied Preemption

Defendant first argues that Plaintiff is really attempting to enforce the FDCA so all Plaintiff's claims are impliedly preempted.  Defendants state "plaintiff asserts a claim *because* of conduct that violates the FDCA."  Def.'s Memo at 5.

The law is clear:  Plaintiff may bring suit to enforce California food-labeling requirements that are identical to FDCA requirements.  As Plaintiff has made clear in the AC, he is not seeking to enforce FDA regulations.  No.  Plaintiff only seeks to enforce the California Sherman Law, which imposes a standard of conduct that is identical to that imposed by the FDCA. Consequently, Plaintiff does not bring a claim under the FDCA, but rather for violations of these identical California laws – which provide a cause of action.  This is precisely how the FDCA and parallel state laws are designed to work together and Courts are uniform on this issue.  *See Khasin v. Hershey Co.*, 2012 WL 5471153, at *4 (N.D. Cal. Nov. 9, 2012) ("Plaintiff's action is based on parallel state laws that mirror the relevant sections of the FDCA and the NLEA."); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 897 (N.D. Cal. 2012) (denying preemption); *Wilson v. Frito–Lay N. America, Inc*., 2013 WL 1320468, at *7 (N.D. Cal., Apr. 1, 2013) (denying preemption); *Brazil v. Dole Food Co., Inc*., 2013 WL 1209955, at *9 (N.D. Cal., Mar. 25, 2013) (holding that the FDCA did not preempt identical provisions under the Sherman Law); *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *3 (N.D. Cal., May 15, 2013) (finding no conflict between the Sherman Law and FDCA and refusing to find that the Sherman Law claims preempted); *In Re Farm Raised Salmon Cases*, 42 Cal.4th at 1084, n. 5 ("There is no dispute that, under California law, private parties may assert UCL claims based on violations of the Sherman Law").

Defendants cite three cases for this argument:  *Stengal*, *Perez v. Nidek*, 711 F.3d 1109 (9th Cir. 2013), and *Pom Wonderful v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012).  However, these cases do not stand for the sweeping change in preemption law that Defendants would have this Court believe.  Indeed, Defendants' argument has been made and rejected repeatedly by courts in this District. At least three recent decisions have analyzed these three cases in the food labeling context and found no implied preemption.  *See Clancy v. The Bromley Tea Co.*, 2013

1    WL 4081632, at *7-9 (N.D. Cal. Aug. 9, 2013), *Samet v. Procter & Gamble Co.*, 2013 WL

2    3124647, at *6-7 (N.D. Cal. June 18, 2013), and *Trazo v. Nestle USA, Inc.*, 2013 WL 4083218, at

3    *6-7 (N.D. Cal. Aug. 9, 2013).  In *Trazo v. Nestle*, Judge Grewal held:

> Numerous courts have concluded that Congress did not intend the FDCA as a
> "sweeping preemption" of all unfair competition and false and misleading
> advertisement claims related to nutritional labels. Nestlé nevertheless counters by
> attempting to sew two provisions of the FDCA together: the express preemption
> provision of Section 343–1(a), which prohibits any state law establishing
> requirements "not identical" to the FDCA, and the implied preemption provision
> of Section 337(a), which provides that enforcement of "violations[ ] of this
> chapter shall be by and in the name of the United States." But by prohibiting
> nonidentical state regulations, the express preemption provision specifically
> contemplated the possibility of parallel state regulations, and thus authorized
> states to adopt regulations so long as they were identical. Otherwise, why
> wouldn't the FDCA bar state-crafted regulations altogether? As for the implied
> preemption provision, the plain language prohibits private enforcement of the
> FDCA, but does not apply this ban to parallel state statutory schemes. The FDCA
> therefore does not preclude states from adopting their own parallel laws and
> adopting a different mechanism for enforcing those laws. California chose to
> exercise this right by enacting the Sherman Law and allowing private plaintiffs to
> enforce that law through the UCL. While state law tort actions cannot be used to
> improperly intrude on the FDA's exclusive jurisdiction, *Plaintiffs here sue under
> state law—namely, the Sherman Law, UCL, FAL, and CLRA—and so their
> claims are not impliedly preempted.*

15   *Trazo*, 2013 WL 4083218, at *6 (citing *Perez*) (emphasis added).

16   In *Bromley Tea*, Judge Tigar made the same ruling.  There, the court held:

> Courts in this district "have repeatedly refused to find preemption" where "a
> requirement imposed by state law effectively parallels or mirrors the relevant
> sections of the [FDCA]" (citations omitted).  Plaintiffs must navigate a "narrow
> gap" to avoid preemption—they must be suing for conduct that violates the
> FDCA, but not because the conduct violates the FDCA. *Perez v. Nidek Co., Ltd.*,
> 711 F.3d 1109, 1120 (9th Cir. 2013). ***Plaintiffs have done that here***.
>
> * * *
>
> Here, there is no similar problem. Plaintiff is suing for violations of the Sherman
> Law, not attempting to impose requirements greater than those imposed by the
> FDCA. The Sherman Law is limited to the requirements of the FDCA. However,
> it exists independently of that law, and violating its requirements would be a valid
> state cause of action even if the FDA ceased to exist. The sole basis of Perez's
> claim was the FDA status of the device, and so his claim depended entirely on the
> existence of the FDA. But here, Clancy's claim does not depend on the FDA,
> except in the sense that the Sherman Law mirrors the requirements of the FDCA.
> This court does not read *Perez* as having quietly reversed the well-established
> principle of cooperative federalism, recognized in numerous cases discussed
> supra, that states may enact laws whose substantive content mirrors that of a
> federal statute.

28   *Bromley Tea*, 2013 WL 4081632, at *8 (emphasis added).  Both Judge Grewal and Judge Tigar

1    were correct.

2         **C.      There Is No Express Preemption**

3         Defendants claim Plaintiff is attempting to impose requirements different from or in

4    addition to federal requirements.  This is wrong.  Plaintiff's claims are based on California law

5    that imposes standards that mirror the FDA regulations, and they are therefore not preempted. As

6    this Court observed in *Khasin*:

7              Underlying Plaintiff's cause of action is the allegation that Defendant's practices
              have violated California state law provisions that govern the types of
8              representations made on food labels. Plaintiff also contends that these provisions
              mirror the FDCA and federal regulations. As such, contrary to Defendant's
9              contention, complying with the demand requested by Plaintiff in this cause of
              action would not require that Defendant undertake food labeling or representation
10             different from the provisions of the FDCA or the rules and regulations
              promulgated by the FDA. For these reasons, the Court cannot conclude that
11             Plaintiff's claims are expressly preempted.

12   *Khasin*, 2012 WL 5471153, at *4.

13            **1.      Evaporated Cane Juice Claims**

14        Plaintiff has alleged that the use of the ingredient ECJ in the forms described above

15   violate both California and federal law.  AC ¶¶ 46-61.   In response, Defendants argue (1) the

16   regulations really do not prohibit the use of ECJ and (2) that ECJ actually is the common and

17   usual name. Def.'s Memo at 10.  Thus, Defendants contend, to the extent Plaintiff is seeking,

18   through his claims, to require Defendants to use a term other than the term ECJ, Plaintiffs are

19   seeking to establish a "non-identical" labeling requirement and Plaintiff's claims are preempted.

20   Defendants' arguments have no merit.

21        The FDA has repeatedly warned food manufactures that the regulations require the labels

22   use the common or usual name of ingredients and that "the term 'evaporated cane juice' is ***not*** the

23   common or usual name of any type of sweetener." *See* 2009 FDA *Guidance for Industry:*

24   *Ingredients Declared as Evaporated Cane Juice, Draft Guidance* ("2009 Guidance"). AC ¶ 51.

25   This 2009 Guidance also says the "FDA considers such representations to be false and misleading

26   under section 403(a)(1) of the Act (21 U.S.C. § 343 (a)(1)) because they fail to reveal the basic

27   nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups)

28   as required by 21 C.F.R. § 102.5." *Id.*

The FDA has repeated their position that ECJ is an improper term in warning letters to the food industry.  AC ¶¶ 53-55.  For example, in a Warning Letter to Hail Merry, LLC (October 23, 2012), the FDA stated "[y]our Grawnola Orange Cranberry product is misbranded within the meaning of Section 403(i)(2) of the Act [21 U.S.C. § 343(i)(2)], because it is fabricated from two or more ingredients, but the label fails to declare the common or usual name of each ingredient in the product in accordance with 21 CFR 101.4. *Specifically, your product lists, "Evaporated Cane Juice" in the ingredient statement; however, evaporated cane juice is not the common or usual name of any type of sweetener*." (emphasis added).  *See also*, Warning Letter to Bob's Red Mill Natural Foods (July 31, 2012) (same); Warning Letter to Hato Portrero Farm, Inc. (April 3, 2008) (same).[2]

Defendants rely heavily on statements in the 2009 Draft Guidance that it "does not create or confer any rights" or "bind [the] FDA or the public." Def.'s Memo at 10.  Faced with identical language as the phrases quoted by Defendants in other non-final, draft guidance, Courts have had no difficulty in concluding such language to be "boilerplate" and that while "'rights' may not be created [by the guidance] 'obligations' certainly are" imposed on the regulated.  *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022-23 (D.C. Cir. 2000). Such Courts have noted that notwithstanding the boilerplate, guidance documents can function like a Czar's "ukase" and such guidance "commands, it requires, it orders, it dictates" and it provides the "marching orders" by which an agency expects those it regulates to "fall in line" with what is in effect "final agency action, reflecting settled agency position which has legal consequences" for regulated companies that must follow the guidance. *Id.*

The 2009 Draft Guidance was not a proposed rule, it was a restatement of the FDA's longstanding interpretation of its regulation as embodied not only in the 2009 Draft Guidance, but also in the 2000 Guidance Letter and numerous warning letters. Where, as here, the agency is interpreting its own regulations such as the food labeling rules and nutrient content claims embodied in 21 C.F.R. § 101 that interpretation is "controlling." Thus the Ninth Circuit has

---

[2] The FDA Warning Letters are publically available documents and can be viewed at http://www.fda.gov/ICECI/EnforcementActions/WarningLetters /default.htm.

stated: "[w]e give wide deference to an agency's reasonable interpretation of its own regulation." *Public Lands for the People, Inc. v. United States Dep't of Agric.*, 697 F.3d 1192, 1199 (9th Cir. 2012). "[W]here an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under Auer unless 'plainly erroneous or inconsistent with the regulation.'" *Id.* (*quoting Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)); *see also Vanscoter v. Sullivan*, 920 F.2d 1441, 1449 (9th Cir. 1990) (although notice of proposed rulemaking did not have the force of law, it was entitled to deference as the Secretary's authoritative administrative interpretation of the governing statute). Even non-final pronouncements lacking the force of law are still entitled to deference as authoritative agency interpretations. *Id.* Compliance Guidance and other agency pronouncements can, "as a practical matter, have binding effect." *Appalachian Power Co.,* 208 F.3d at 1021 (non-binding EPA guidance documents were final agency action where an agency treated the documents as controlling in the field, and based enforcement on them); *Smith v. Cabot Creamery Coop., Inc.*, No. 12-4591 SC, 2013 U.S. Dist. LEXIS 25617, at *10-16 (N.D. Cal. Feb. 25, 2013) (FDA's informal statements clarifying its regulations entitled to deference).

Accordingly, to the extent Plaintiff's claims seek to hold Defendants liable for using the term ECJ, Plaintiff is not seeking to establish a requirement which is not identical to the FDA's requirements. Consequently, Plaintiff's claims are not expressly preempted.  *See Wilson v. Frito-Lay N. Am., Inc.*, 2013 WL 1320468, at *10-11 (N.D. Cal. Apr. 1, 2013) (holding that plaintiff's claims, which alleged that the defendant's labeling violated "nonbinding, informal [FDA] guidance," were not expressly preempted because such guidance was owed deference under *Auer*); *Ivie v. Kraft Foods Global, Inc.*, 2013 WL 685372, at *9, *12 (N.D. Cal. Feb. 25, 2013) (holding that ECJ claims were not expressly preempted even though "[t]here are no federal laws or regulations… governing [ECJ] claims… [because] the FDA has nevertheless articulated a policy position").

### 2.    Natural Claims

Plaintiff's claims based on Defendants' use of  "natural" or "all natural" on its products' principle display panels do not seek to impose any requirement for food labeling "that is not

1   identical to the [federal] requirement[s]." Def's Memo at 9-10 (quoting 21 U.S.C. § 343-1).

2   Numerous courts in this district have rejected the idea that unfair competition claims based on

3   "natural" type labels are expressly preempted by FDA regulations. *See Ivie,* 2013 WL 685372, at

4   *12-13 (listing cases). The *Ivie* Court correctly pointed out that:

5       [T]he FDA's position is sufficiently clear with respect to "natural" labels.
        Whether an ingredient is "artificial or synthetic" under FDA policy is a factual

6       determination on a product-by-product basis. *See, e.g., Astiana v. Dryer's Grand
        Ice Cream Inc.,* 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012) (finding a

7       question of fact as to whether a reasonable consumer would normally expect
        potassium carbonate—an alkalizing agent—to be present in Haagen–Dazs ice

8       cream, based on the FDA's policy statement). Permitting a factual determination to
        go forward with respect to whether the challenged "natural" labels in this case

9       would deceive a reasonable consumer is not akin to defining FDA policy, but
        rather is a finding of fact with respect to this particular plaintiff and product, and

10      would not risk undermining the agency's expertise in this area. The court thus
        denies defendants' motion to dismiss the UCL, FAL and CLRA claims under

11      based on allegedly deceptive "natural" labels.

12   *Id.* at *13. Similarly, Plaintiff and the class in the present case are not attempting to risk

13   undermining FDA expertise in the food arena, but only to enforce current California state laws

14   that add no extra requirements to those imposed under the FDCA.[3]

15       Defendant attempts to characterize processed ingredients that no reasonable consumer

16   would expect to be naturally occurring in "natural" sodas as permissible because under some

17   circumstances irrelevant to Defendants' products, the ingredients might be construed as

18   permissible and thus not unlawful or misleading under California Law. The issue is not the

19   addition of the subject ingredients into the products. The issue on which express preemption rest

20   is whether Defendant under the California law lawfully labeled its sodas "All Natural" when the

21   ingredients are those that one would never expect to be naturally occurring in the products. None

22   of the ingredients complained of in the AC could be considered natural as used in the Defendant's

23   "natural" sodas.

24   **<u>Caramel Coloring</u>**

25       Plaintiff has alleged that the caramel coloring in its sodas is artificial under the identical

26

---

27   [3] Plaintiff's AC includes claims based upon the inclusion of carbon dioxide and black carrot juice
     which are ingredients that are unnatural to the products that contain them. For this case only,

28   Plaintiff will not pursue claims based on those ingredients. Further, Defendant's motion
     discusses Spinach Extract; Plaintiff's made no such allegation based on that ingredient.

1  Federal and California law and thus inclusion of a "natural" or "all natural" statement on

2  Defendant's sodas misbrands the sodas. AC at ¶¶ 7, 70.   FDA policy is clear that "natural" labels

3  are misleading where the products, in fact, contain artificial or synthetic ingredients. *See* 58 Fed.

4  Reg. 2302, 2307 (Jan. 6, 1993) (permitting "natural" labels only when "nothing artificial or

5  synthetic (including all color addities regardless of source) has been included in, or has been

6  added to, a food that would not normally be expected in the food"). Even if the Court assumes

7  that Defendants are asserting that the caramel coloring in its colas is naturally derived, the Court

8  should be guided that caramel coloring "regardless of its source" is not permitted under either the

9  state law which Plaintiff has sued under or the identical Federal requirements when an "all

10  natural" claim is made.[4]   Moreover, the type of caramel coloring that goes into sodas has been

11  chemically produced in a way that cannot be considered natural and produces trace amounts of a

12  byproduct carcinogen (4-methylimidazole) that no reasonable person would expect to be in an all

13  natural cola.[5]

14  **Citric and Tartaric Acids**

15      The FDA has long held in *enforcement* actions that the addition of chemicals such as citric

16  and tartaric acids illegally misbrands a product if the product declares itself to be "all natural".

17  On August 16, 2001, the FDA sent a warning letter to Oak Tree Farm Dairy, Inc.  The letter

18  "found serious violations" of the Federal Food, Drug and Cosmetic Act and Title 21, Code of

19  Federal Regulations, Part 101 – Food Labeling (21 CFR 101), and stated in pertinent part:

20      Although FDA has not established a regulatory definition for "natural," we
21  discussed its use in the preamble to the food labeling final regulations (58 Federal
   Register 2407, January 6, 1993, copy enclosed).  FDA's policy regarding the use
   of "natural," means nothing artificial or synthetic has been included in, or has been
22  added to, a food that would not normally be expected to be in the food.  The same
   comment applies to use of the terms "100 % NATURAL" and "ALL NATURAL"
23  on the "OAKTREE REAL BREWED ICED TEA" label because it contains citric
   acid.[6]

24

---

25  [4] Remarkably, even the producers of caramel coloring in the United States are clear that the
   coloring cannot be an ingredient on "all natural" labeled products.  *See* <u>Natural Status of Sethness</u>
26  <u>Caramel Color</u> stating *"[h]owever, any color added to food means the food becomes 'Artificially
   Colored' as described in 21 CFR 101.22(k)(2) and the 1986 FDA Compliance Policy Guide."*
27  (Exhibit 1) (emphasis added); <u>Sethness Caramel Color Certification</u>, stating *"FDA guidelines
   state that "all added colors result in artificially colored food."* (Exhibit 2)(emphasis added)
28  [5]www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm364184.htm.
   [6]www.fda.gov/ICECI/EnforcementActions/WarningLetters/2001/ucm178712.htm.  *See also*

1  Plaintiff is likewise only seeking to enforce identical regulations under California law for calling

2  its sodas "all natural" when they contain chemically created and added citric acid or tartaric acid

3  that is not is not natural to the sodas.  AC ¶ 70.

4        In defense to these allegations, Defendant does not state that these acids are naturally

5  occurring in its products.  Defendant's argument is only that tartaric acid "could very well be

6  considered a natural flavor . . .  depending on the its purpose in the particular product." Def.'s

7  Memo at 12.   Defendant also doesn't state that the citric acid in its sodas is natural nor explain

8  why the analysis of its product under California law would be any different than that under

9  federal law.

10        **Ascorbic Acid**

11        The Northern District has recently denied a motion to dismiss based upon an identical

12  argument that Whole Foods now asserts with regards to ascorbic acid.  The Court held that "[i]n

13  sum, because Trader Joe's has made no showing that the lack of an "All Natural" label would

14  imply or suggest ascorbic acid inferiority in violation of the FDCA and FDA regulations, it has

15  made no showing that plaintiffs' Juice-related claims are preempted." *Larsen v. Trader Joe's Co.*,

16  917 F. Supp. 2d 1019, 1025 (N.D. Cal. 2013).   This Court should likewise deny Whole Foods

17  motion for lack of showing that any application of California law to give a different result than

18  application of identical federal law.

19  **III.    The Primary Jurisdiction Doctrine Is Inapplicable**

20        "The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a

21  complaint without prejudice pending the resolution of an issue within the special competence of

22  an administrative agency. . . and is to be used only if a claim involves an issue of first impression

23  or a particularly complicated issue Congress has committed to a regulatory agency." *Clark v.*

24  *Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). A court traditionally weighs four

25  factors in deciding whether to apply the primary jurisdiction doctrine:

26        (1) the need to resolve an issue that (2) has been placed by Congress within the

27  _____

28  November 16, 2011 Warning letter to Alexia Foods, Inc.,
   www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm281118.htm

jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity that (4) requires expertise or uniformity in administration.

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). "Where, as here, the doctrine is invoked at the motion to dismiss stage, the question is "'whether the complaint plausibly asserts a claim that would not implicate the doctrine.'" *Chavez v. Nestle USA, Inc.*, 511 Fed. Appx. 606, 607 (9th Cir. 2013) (quoting *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1252 (9th Cir. 2009), *rev'd on other grounds*, 131 S. Ct. 1342, 179 L. Ed.2d 457 (2011)).

As stated repeatedly, Plaintiff's claims are based on violations of the Sherman Law. As the Court held in *Kosta v. Del Monte Corp.*, 2013 WL 2147413, at *9 (N.D. Cal. May 15, 2013), these violations "piggyback" violations of FDA regulations and, therefore, do not create new food label requirements not already in the FDCA and FDA regulations. Accordingly, as in *Kosta*:

> [a]djudication of the claims here requires only that the Court determine whether [Defendants'] labels actually complied therewith, a determination that would not 'risk undercutting the FDA's expert judgments and authority.' As in any other food labeling cases filed in this district, here '[t]he FDA's expertise ... is not necessary to determine whether the labels are misleading [and t]he reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve.'

*Id.* at *10 (citations omitted).

"[C]ourts in the Northern District of California have generally declined to dismiss the complaint on primary jurisdiction absent concrete evidence that the FDA is currently involved in creating a new regulation concerning the subject of the lawsuit." *Trazo*, 2013 WL 4083218, at *6 n.55. *See also, Samet*, 2013 WL 3124647, at *7 ("Allegations of deceptive labeling do not require consultation of the expertise of the FDA as 'every day courts decide whether conduct is misleading.'") (citation omitted); *Ivie*, 2013 WL 3296616, at *7-8 ("plaintiff's case does not require this court to determine difficult issues of first impression better left to the FDA's expertise, but instead only requires the application of well-understood FDA regulations directly on point").

Defendants suggest that this Court refer Plaintiff's all natural claim to the FDA and dismiss this case pending the FDA's response. Def.'s Memo at 15.  First, Defendants fail to

1   articulate why the FDA's expertise and experience is required. Defendant's argument was

2   rejected by Judge Breyer in *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp. 2d 1028 (N.D. Cal.

3   2009) for this very reason:

> Application of the doctrine is not appropriate here. At a minimum, various parties
> have repeatedly asked the FDA to adopt formal rulemaking to define the word
> natural and the FDA has declined to do so because it is not a priority and the FDA
> has limited resources. Moreover, this is not a technical area in which the FDA has
> greater technical expertise than the courts-every day courts decide whether
> conduct is misleading. Finally, in *Clark,* the plaintiff's claim was based on federal
> law and therefore referral to the agency would finally resolve the legal question
> before the Court. Here, in contrast, plaintiffs' claims are based on state law and, as
> the Court's analysis of implied preemption suggests, even if the FDA were to
> formally define "natural," federal law would not dispose of plaintiffs' state law
> claims.

10  *Id.* at 1035, *see also In re ConAgra Foods, Inc.*, 2013 WL 4259467 (C.D. Cal. Aug. 12, 2013)

11  ("plaintiffs' claims did not involve 'a technical area in which the FDA has greater ... expertise

12  than the courts' remains no less true today than it was two years ago."). As in *Lockwood*,

13  Plaintiff's claims are based on state law (which has incorporated the federal law at issue), primary

14  jurisdiction is not appropriate.

15      Defendant relies primarily on *Cox v. Gruma Corp.*, 2013 WL 3828800 (N.D. Cal. July 11,

16  2013) where the court dismissed a natural claim on a food product under the primary jurisdiction

17  doctrine. Def.'s Memo at 15.  *Cox* is distinguishable however as the Plaintiff's all natural claims

18  were dismissed because the products at issue contained genetically modified organisms

19  ("GMOs") and the defendant's product labels stated its products were "All Natural."  *Id.* at 1.

20  The primary jurisdiction doctrine was applicable in *Cox* because the FDA had not issued ***any***

21  guidance regarding whether products containing GMOs could be labeled "All Natural." *Id.* at 2.

22  Here however, the FDA has issued guidance regarding the use of the term "natural" and considers

23  a food label to be truthful and non-misleading when "nothing artificial or synthetic . . . has been

24  included in, or has been added to, a food that would not normally be expected to be in the food.

25  *See* 58 Fed. Reg. 2302, 2407 (January 6, 1993). In its 2009 FOP Guidance Sec. 587.100 the FDA

26  stated:

> The use of the words 'food color added,' 'natural color,' or similar words
> containing the term 'food' or 'natural' may be erroneously interpreted to mean the
> color is a naturally occurring constituent in the food. Since all added colors result

in an artificially colored food, we would object to the declaration of any added color as 'food' or natural.'

As alleged in the AC, Defendant's labeling practices of their "all natural" and "natural" sodas violate the FDA's 2009 FOP Guidance.  AC ¶ 67. The FDA has also issued warning letters concerning the use of the term "natural," and Defendants are aware of these FDA warning letters. AC ¶ 69. *Cox* is not persuasive here, and the primary jurisdiction has no application.

## IV.   Plaintiff's AC Alleges Plausible False Advertising Claims

### A.    The AC States a Claim Under the UCL, FAL, and CLRA

The UCL broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting Cal. Bus. & Prof. Code § 17200). "A business act or practice may violate the UCL if it is either 'unlawful,' 'unfair,' or 'fraudulent.' Each of these three adjectives captures 'a separate and distinct theory of liability.'" *Rubio v. Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir. 2010) (quoting *Kearns,* 567 F.3d at 1127). Plaintiff has pleaded all three. "[I]n essence, an action based on Business and Professions Code section 17200 to redress an unlawful business practice 'borrows' violations of other laws and treats these violations, committed pursuant to business activity, as unlawful practices independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104 Cal. App. 4th 508, 515 (2002). Defendants assert that Plaintiff has failed to state a claim under the UCL, FAL, and CLRA on the theory that its labels are not likely to deceive a reasonable consumer.

Defendants ignore the fact that for each product at issue, Plaintiff has also pleaded claims under the "unlawful" prong of the UCL. The "reasonable consumer" test is inapplicable to a UCL claim under the unlawful prong because reliance and deception are not elements of that claim. That "[t]here are a number of theories that have been litigated and rejected as defenses to claims alleging 'unlawful' business practices…. That no one was actually deceived by the practice is not a defense to a section 17200 "unlawful" business practice claim." Stern, § 5.166, BUS. & PROF. C.

§ 17200 PRACTICE (The Rutter Group 2012).[7] Plaintiff has alleged throughout the AC that Defendants have violated the Sherman Law and that it is illegal to hold, advertise, distribute or sell misbranded food products). Such violations give rise to an unlawful claim under the UCL. Under the circumstances of this case, Defendant's misbranding is essentially a strict liability offense under the UCL.  Indeed, Judge Grewal recently held in a food labeling case, "[t]o state a claim under the "unlawful" prong of the UCL," Plaintiff must only allege plausible facts supporting a finding that Defendants "violated the Sherman Law." *Trazo*, 2013 WL 4083218, at * 8.

Defendants ignore Plaintiff's unlawful claim and argues almost exclusively that this Court must act as a fact finder at this early stage of the litigation and rule, on the face of the SAC alone, that no reasonable consumer could possibly be deceived by its claims. However, these are fact intensive issues not suitable for a decision at the motion to dismiss stage. Numerous courts, in cases similar to Plaintiffs', have agreed and denied motions to dismiss on this very basis. The most recent decision was by Judge Conti in *Colucci v. Zoneperfect Nutrition Co.*, 2012 WL 6737800 (N.D. Cal. Dec. 28, 2012).  There the court cited to a laundry list of recent decisions and denied the motion to dismiss on this part because it involved issues of fact.  *Id.* at 23 ("Defendant's argument as to plausibility is, at bottom, an argument that no reasonable consumer is likely be deceived by the labeling of its nutrition bars. But, as the Ninth Circuit and numerous courts have held, that issue is generally not amenable to resolution on the pleadings because it involves issues of fact.").

This Court rejected similar arguments in *Khasin*, and his reasoning is equally applicable here:

> Regarding the substance of the claims, Defendant contends that Plaintiff fails to plead a plausible legal theory in satisfaction of Rule 8's pleading requirement. …Defendant contends that in order to actually have been misled by this allegedly non-compliant labeling, Plaintiff would have had to (i) have been familiar with the FDA regulations regarding the use of phrases like "excellent source" and

---

[7] *See also Medrazo v. Honda of North Hollywood*, 205 Cal. App. 4th 1, 12 (2012) ("the Supreme Court also explained that an actual reliance requirement does not apply to UCL actions that are not based upon a fraud theory") (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 325 fn.17 (2009)) ("There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application.

1
2
3
4
5
6

"good source"; (ii) have believed that Hershey's use of the word "source" without a modifying adjective was the legal equivalent of the claim that the products were a "good source" or "excellent source" of antioxidants; and (iii) have concluded based on the "source of antioxidants" labeling alone that the products contained more antioxidants than they actually do contain. Defendant argues that the notion that a "reasonable consumer," as Plaintiff purports to be, had this knowledge and reached these conclusions is legally implausible under the standards set forth in *Iqbal* and *Twombly*....The Court rejects this argument simply because the issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6) motion.

7   *Khasin,* at *7.[8]

8                    **1.    The UCL Unlawful Prong**

9        Plaintiff has pleaded a proper UCL unlawful prong case.  An unlawful business practice is

10  "anything that can properly be called a business practice and that at the same time is forbidden by

11  law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 180 (1999). The

12  unlawful prong incorporates other laws and treats violations of those laws as unlawful business

13  practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co*., 225

14  F.3d 1042, 1048 (9th Cir. 2000). "[V]irtually any law or regulation—federal or state, statutory or

15  common law—can serve as a predicate for a [Section] 17200 'unlawful' violation." *Paulus v. Bob

16  Lynch Ford, Inc*., 139 Cal. App. 4th 659, 681 (2006) (internal citations and quotations omitted).

17  "To state a cause of action based on an unlawful business act or practice under the UCL, a

18  plaintiff must allege facts sufficient to show a violation of some underlying law." *Finuliar v. BAC

19  Home Loans Servicing, L.P*., No. C-11-02629 JCS, 2011 U.S. Dist. LEXIS 107324 at *23 (N.D.

20  Cal. Sep. 21, 2011).

21

22
23
24
25
26
27
28

[8] Many other courts have held the same thing.  *See also*, *Williams*, 552 F.3d at 938-39 (dealing with representations that defendant's products were made with "fruit juice and other all natural ingredients"); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *4 (N.D. Cal. May 26, 2011) (alkalized cocoa in ice cream and frozen yogurt labeled "all natural" the court held "[i]n particular, the issues of reliance and materiality are too fact-dependent to be resolved on [a] 12(b)(6) motion."); *Briseno v. Conagra Foods, Inc.*, 2011 U.S. Dist. LEXIS 154750, at 21 (C.D. Cal. Nov. 23, 2011) (genetically modified organisms in defendant's cooking oil labeled "100% natural"); *Von Koenig v. Snapple Beverage Corp*., 713 F. Supp. 2d 1066, 1071, 1079-80 (E.D. Cal. 2010) (high fructose corn syrup in beverages labeled "All Natural"); *Henderson v. Gruma Corp*., 2011 WL 1362188, at *11 (C.D. Cal. April 11, 2011) (trans fat in guacamole and bean dip labeled "All Natural"); *Linear Technology v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 134 (2007) ("Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of evidence from both sides and which usually cannot be made on demurrer.").

Here, Plaintiff alleged facts showing that that each of Defendants' labels at issue violate FDA regulations, which means they also violate California's Sherman Law, which means that they also violate the UCL, which means that Plaintiff has stated a claim under the unlawful prong of the UCL regardless of whether Defendants' labels are likely to deceive. *See Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 2001 U.S. Dist. LEXIS 22310 (C.D. Cal. 2001) ("Centeon's violation of FDA regulations falls squarely within this broad proscription. Hence, Defendants are not entitled to have this claim thrown out as a matter of law.")

### 2.    The Misleading Claims Sounding in Fraud

Defendants' labels also constitute a fraudulent business practice under the UCL. A fraudulent business practice under the UCL is "one in which members of the public are likely to be deceived." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (internal quotations omitted). The standard for deceptive practices under the "fraudulent" prong of the UCL applies equally to misrepresentation-based claims under the FAL and the CLRA. *See Williams*, 523 F.3d at 938; *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003). Plaintiffs' alleged that Defendant's misrepresentation were likely to deceive a reasonable consumer. *See* AC ¶¶ 74, 129, 130.

Defendants assert that the AC fails to state a claim under the UCL, FAL, and CLRA on the theory that the product labels are not likely to deceive. Judge Davila addressed similar arguments in *Khasin*, and his reasoning in rejecting Hershey's argument is equally applicable here:

> Regarding the substance of the claims, Defendant contends that Plaintiff fails to plead a plausible legal theory in satisfaction of Rule 8's pleading requirement. …Defendant contends that in order to actually have been misled by this allegedly non-compliant labeling, Plaintiff would have had to (i) have been familiar with the FDA regulations regarding the use of phrases like "excellent source" and "good source"; (ii) have believed that Hershey's use of the word "source" without a modifying adjective was the legal equivalent of the claim that the products were a "good source" or "excellent source" of antioxidants; and (iii) have concluded based on the "source of antioxidants" labeling alone that the products contained more antioxidants than they actually do contain. Defendant argues that the notion that a "reasonable consumer," as Plaintiff purports to be, had this knowledge and reached these conclusions is legally implausible under the standards set forth in *Iqbal* and *Twombly*.…The Court rejects this argument simply because the issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not deceived by the labeling; this argument is therefore beyond the scope of

1    this Rule 12(b)(6) motion.

2  *Khasin,* at *7.

3        Food labels are found misleading under the FDCA when they omit information that is

4  "material" or if they include information that would cause a consumer to mistakenly purchase a

5  product due to a confusing or deceptive label. 21 U.S.C. § 321 (n). FDA labeling regulations are

6  aimed at representations on food labels that the FDA has determined to be deceptive or

7  misleading to consumers. *See* 15 U.S.C. § 1452 (captioned "Unfair and deceptive packaging and

8  labeling; scope of prohibition"); *Delacruz v. Cytosport, Inc.*, 2012 WL 2563857, at *7 (N.D. Cal.

9  June 28, 2012) ("The FDA regulations may lend objective criteria by which to determine whether

10 certain words and phrases used on the labels are misleading.") In other words, a violation of FDA

11 regulations means that, in the judgment of the FDA, the label is misleading. And since the

12 California expressly adopted those requirements in Cal. Health & Safety Code § 110670 of the

13 Sherman Law, that means the State has also determined that labels violating those regulations are

14 misleading.

15       Unless the Court can say *as a matter of law* that contrary to the complaint's allegations,

16 members of the public were not likely to be deceived or misled by Defendant's alleged conduct,

17 the Court should hold that plaintiff stated a cause of action. *Klein v. Chevron U.S.A., Inc.*, 202

18 Cal. App. 4th 1342, 1381 (2012). In order to do that, the court would have to say, as a matter of

19 law, the FDA and the State of California are wrong.

20       **B.    A Reasonable Consumer Would Be Deceived By The Challenged
           Statements**

21       Even if the court were to apply the reasonable consumer test at this early stage for

22 Plaintiff's FAL, CLRA, and unfair/fraud UCL claims, Plaintiff wins.  Plaintiff's AC more than

23 adequately pleads that a reasonable consumer could be misled by Defendants' label claims.

24       **The ECJ Claim.** As detailed in the AC and elsewhere in this brief, the FDA has

25 repeatedly warned food manufacturers that the use of the term ECJ on food labels is unlawful and

26 ""false and misleading" because it "fail[s] to reveal the basic nature of the food and its

27 characterizing properties (i.e., that the ingredients are sugars or syrups)" and "falsely suggests the

28

1    sweeteners are juice." *See* AC ¶ 17.  But even apart from the FDA's position on the matter, the

2    Court should not rule, as a matter of law, that it is implausible that a reasonable consumer could

3    be misled by Defendants' labels. Words like "sugar" or "syrup" would pop out at a reasonable

4    consumer scanning the ingredients or added sugar in a way that "evaporated cane juice" would

5    not. But then, that's the whole point. The only reason Defendants call sugar ECJ is that it is likely

6    to mislead.

7        **The "Natural" Claim.**  Plaintiffs have properly alleged in the AC and argued herein that in

8    inclusion of chemically created citric acid, tartaric acid, ascorbic acid, and caramel coloring are not

9    ingredients found naturally occurring in Whole Foods sodas, and that a reasonable consumer would

10   be misled by a "natural" or "all natural" statement on the principle display panel (i.e., the front) of

11   Defendant's soda products. It is reasonable for any consumer to believe that "all natural" means a

12   product free of artificial ingredients.

13        **C.    Plaintiff Has Adequately Alleged Reliance, Causation and Injury**

14        Defendants argue that Plaintiff fails to plausibly allege reliance, causation or injury so *all*

15   of his claims fail.  Def.'s Memo at 17.  Again, Defendants do not distinguish Plaintiff's

16   misbranded claim from the fraud based claims.  They just attempt to group Plaintiff's entire case

17   together in an effort to completely avoid the Plaintiff's first cause of action.  In this instance the

18   reason is clear: under Plaintiff's UCL unlawful claim reliance and causation are simply not

19   required.  *See Galvan v. KDI Distrib.*, 2011 U.S. Dist. LEXIS 127602, at *28-29 (C.D. Cal. Oct.

20   25, 2011) ("Unlike Hale, here the Chapter One violation has no built-in reliance requirement and

21   the predicate unlawful conduct is not misrepresentation. Rather, the unlawful conduct is a failure

22   to properly label and package the calling cards in compliance with the statute. Accordingly, a

23   UCL claim predicated on a section 17538.9 violation does not require a showing of the

24   class representative's reliance."); *Olivera v. American Home Mortg. Servicing, Inc.*, 689 F. Supp.

25   2d 1218, 1224 (N.D. Cal. 2010)  ("for claims based on the 'unfair' or 'unlawful' prong of the

26   UCL claim . . . plaintiff need not allege reliance on misrepresentations"); *In re Ditropan XL*

27   *Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106 (N.D. Cal. 2007) (reliance not an element of claim

28   under "unlawful" prong); *Frezza v. Google Inc.*, 2013 U.S. Dist. LEXIS 57462 (N.D. Cal. Apr.

1  22, 2013)  ("Also similar to North Carolina's law, no reliance is required to prove violations of

2  the UCL based on "unlawful" or "unfair" conduct."); *Rand v. Am. Nat'l Ins. Co.*, 2010 U.S. Dist.

3  LEXIS 82584 (N.D. Cal. June 22, 2010) ("Moreover, reliance is only required under the fraud

4  prong of the UCL, and is not an element under the "unfair" or "unlawful" prongs of that statute");

5  *Aho v. Americredit Fin. Servs*., 277 F.R.D. 609, 623 (S.D. Cal. 2011) ("The claim at issue here,

6  that Defendant has engaged in unlawful conduct under the UCL, does not require reliance").

7      Putting the misbranding aspect of the case aside, Defendants assertions that it is not

8  plausible that Plaintiff relied on its misrepresentations as alleged in the AC fail for the same

9  reasons as the "reasonable consumer" discussed above. As this Court observed in *Khasin*, "the

10  issues Defendant raise ultimately involve questions of fact as to whether Plaintiff was or was not

11  deceived by the labeling; this argument is therefore beyond the scope of this Rule 12(b)(6)

12  motion." *Khasin,* at *7; *Williams*, 552 F.3d at 938-939.,

13      Defendant also claims that Plaintiffs have not plead a sufficient injury to confer standing.

14  Defendant essentially asserts that unless a product is demonstrated to be dangerous, tainted,

15  spoiled or otherwise contaminated, Plaintiffs lack standing. This is nonsense. This Court

16  addressed the exact same arguments in *Khasin*:

17      The Court rejects these arguments and concludes that Plaintiff alleges facts
       sufficient for Article III standing. In the Amended Complaint, Plaintiff asserts that
18     he would not have purchased the products in question had he known the truth
       about these products and had they been properly labeled in compliance with the
19     labeling regulations. Further, Plaintiff alleges that he had cheaper product
       alternatives for purchase at his disposal. Notwithstanding whether this type of
20     economic injury is merely a "legal construct" as Defendant contends, courts have
       found it to be an adequate allegation to satisfy the injury-in-fact prong of Article
21     III standing. *See Chavez v. Blue Sky Natural Beverage Co*., 340 Fed. App'x 359,
       360-61 (9th Cir. 2009) (finding a sufficient pleading of injury-in-fact where a
22     plaintiff alleged that he would not have paid for allegedly mislabeled products had
       he known the truth about the products' geographic origins); *Astiana* [*v. Ben and
23     Jerry's*], Nos. C 10-4387, C 10-4937, 2011 U.S. Dist. LEXIS 57348, 2011 WL
       2111796 at *10 (finding standing where plaintiffs alleged that they would not
24     have purchased ice cream labeled "all natural" had they known that the product
       contained a synthetic substance); …Furthermore, Plaintiff alleges that he has lost
25     money or property when he purchased the products in question because he did not
       receive the full value of those products as advertised and labeled due to the
26     alleged misrepresentation. As the Ninth Circuit in *Chavez v. Blue Sky Natural
       Beverage Co*. noted, this too is sufficient to establish injury-in-fact for the
27     purposes of standing. 340 Fed. App'x at 361.

28  *Khasin*, at *6-7.

Plaintiff alleged throughout the AC that he paid a premium for Defendants' products and that he would not have purchased the products had he known the labeling was inaccurate. AC ¶¶ 59, 75, 102, 120, 130, 149. In misbranded food cases like this one, nothing more is required. These allegations sufficiently plead standing. *Jones*, 912 F. Supp. 2d at 901. *See also Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011) ("California has created what amounts to a conclusive presumption that when a Defendant puts out tainted bait and a person sees it and bites, Defendant has caused an injury.").

Also, the fact that Defendant sold Plaintiffs misbranded products that were illegal to sell or possess serves as an independent form of injury. As stated in *In re Steroid Hormone*, a plaintiff is:

> "damaged because he bought products that he would not have bought had he known they were not legal to possess….The "damage" Martinez alleged in this case is that, in reliance on GNC's deceptive conduct, he bought an illegal product he would not have bought had he known it was illegal. He does not seek actual damages, but instead seeks restitution. He correctly argues that he is entitled to show that GNC's alleged deceptive conduct caused the same damage to the class by showing that the alleged misrepresentation was material, even if GNC might be able to show that some class members would have bought the products even if they had known they were unlawful to sell or possess without a prescription …. Thus, the question that must be answered in this case is whether a reasonable person would find it important when determining whether to purchase a product that it is unlawful to sell or possess that product. It requires no stretch to conclude that the proper answer is "yes"-- we assume that a reasonable person would not knowingly commit a criminal act).

*In re Steroid Hormone Product Cases*, 181 Cal. App. 4th 145, 157 (2010).

## V.      The AC Complies With Rule 9(b)

While fraud-based claims are generally subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b), Plaintiffs need not plead his 17200 unlawful business practices claims, i.e., his misbranding claims, with particularity. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 105-06 (9th Cir. 2003) (where fraud is not an essential element of a claim, only allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)); *Von Kaenel v. Skinny Girl Cocktails, LLC*, 2:11-cv-07305, Docket No. 66, 3/19/12 Order (C.D. Cal. Mar. 19, 2012) ('Fraud is not an essential element of the [Plaintiffs' FAL, UCL, and CLRA's] causes of action. Thus, heightened pleading is not required and the allegations in the

1    complaint are sufficient.").

2          In that regard, a plaintiff alleging fraud "must state with particularity the circumstances

3    constituting fraud." Fed. R. Civ. P. 9(b). Rule 9(b) "must be read in harmony with (Rule) 8's

4    requirement of a 'short and plain' statement of the claim." *Baas v. Dollar Tree Stores, Inc.,* 2007

5    WL 2462150, at *2 (N.D. Cal. Aug. 29, 2007). The rule requires only that the allegations be

6    "specific enough to give defendants notice of the particular misconduct which is alleged to

7    constitute the fraud charged so that they can defend against the charge and not just deny that they

8    have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To that end,

9    the allegations must contain "an account of the time, place, and specific content of the false

10   representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG*

11   *LLP,* 476 F.3d 756, 764 (9th Cir. 2007). Put another way, averments of fraud must be

12   accompanied by the "who, what, when, where, and how" of the misconduct charged. *Vess v.*

13   *Ciba-Geigy Corp.,* 317 F.3d at 1106 (citation omitted).

14         As stated throughout the AC, the "who" is Defendants Whole Foods Market California,

15   Inc., Mrs. Gooch's Natural Foods Market, Inc., WFM-WO, INC., and WFM Private Label, L.P.

16         The "what" includes Defendants' unlawful and misleading product labeling, including

17   Defendants' use of:

18         1)   "evaporated cane juice" on their 365 Everyday Value Organic Chicken Broth, 365
19              Everyday Value Tomato Ketchup, 365 Everyday Value Organic Ketchup,
                Everyday Value Apple Cinnamon Instant Oatmeal and similar products which list
20              evaporated cane juice as an ingredient. AC ¶¶ 46, 60, 61; and

21         2)   "Natural" or "Naturale" claims on their 365 Everyday Value Cola, 365 Everyday
                Value Ginger Ale, 365 Everyday Value Root Beer, Natural Italian Soda in green
22              apple flavor, and Natural Italian Soda in blood orange flavor. AC ¶ 62.

23         The "when" is during the four (4) years prior to the filing of this his initial complaint,

24   November 2, 2008 until notice is given to the Class. AC ¶ 1.

25         The "where" is on Defendants' labels of the Purchased Products and substantially similar

26   products. AC ¶¶ 3, 60, 70, 100; and the "how the statements were misleading" is that: (1)

27   Defendants violated the Sherman Law in a number of specific ways on the labels of its products,

28   as described herein and in the AC; (2) Plaintiff purchased Defendants' Purchased Products

1    reasonably relying, in substantial part, on Defendants' misrepresentations; and (3) Plaintiff was

2    thus deceived by Defendants' product labels. *See* AC ¶¶ 123-120 [sic][9].  Under this Court's

3    precedent, that is all that is required. *See, e.g., Jones*, 2012 WL 6569393, at *10-11 (same);

4    *Astiana*, 2011 WL 2111796, at *5-6 (same).

5    **VI.    The Request For Injunctive Relief Is Proper**

6    Plaintiff's request for injunctive relief is proper. Plaintiff's action is based on California's

7    UCL, California's False Advertising Law, and California's Consumer's Legal Remedies Act. AC

8    ¶¶ 135-154, 162-177, 178- 190.  Plaintiff also seeks restitution based on unjust enrichment/quasi

9    contract. AC ¶¶ 191-194.  Defendants argue that because Plaintiff stopped purchasing

10   Defendant's misbranded products, and would not purchase them in the future, Plaintiff is unable

11   to obtain injunctive relief.

12   Defendants' argument is, in essence, that Plaintiff lacks Article III standing because he is

13   not "realistically threatened by a repetition of [the violation]." Def.'s Memo at 23 (quoting *Gest v.*

14   *Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)). This argument was rejected in *Henderson v.*

15   *Gruma Corp.*, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011):

16       If the Court were to construe Article III standing as narrowly as Defendant
         advocates, federal courts would be precluded from enjoining false advertising
17       under California consumer laws because a plaintiff who had been injured would
         always be deemed to avoid the cause of the injury thereafter ... and would never
18       have Article III standing ... Prevent[ing] them from bringing suit would surely
         thwart the objective of California's consumer protection laws. That objective is 'to
19       protect both consumers and competitors by promoting fair competition in
         commercial markets for goods and services.'
20
21   *Id.* at *7 (quoting *Kwikset Corporation v. Superior Court of Orange County*, 51 Cal. 4th 310, 320

22   (2011)); *See also Koehler v. Litehouse, Inc.,* 2012 WL 6217635 (N.D. Cal. Dec.13, 2012)

23   (plaintiff had standing to sue for injunctive relief even though he admitted that he did not intend

24   to make another purchase of the product in question); *Ries v. Arizona Beverages USA LLC*, 287

25   F.R.D. 523, 533 (N.D. Cal. 2012) ("As plaintiffs further note, were the Court to accept the

26   suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing

27   for an injunction, then injunctive relief would never be available in false advertising cases, a

28   ───────────────────
     [9] Plaintiff accidently misnumbered his AC. Beginning at paragraph 118, the rest of the paragraphs
     in the AC should be numbered 119-199.

1   wholly unrealistic result.").

2          If this Court accepted Defendants' argument it would effectively "eviscerate the intent of

3   the California legislature in creating consumer protection statutes because it would effectively bar

4   any consumer who avoids the offending product from seeking injunctive relief."

5   *Larsen*, 2012 WL 5458396, at *4. Defendants cite *Campion v. Old Republic Home Protections*

6   *Co.*, 861 F. Supp. 2d 1139 (S.D. Cal. Mar. 23, 2012) in support of their arguments, but *Campion*

7   was expressly rejected by Judge Illston in *Larsen*. *See Larson*, 2012 WL 5458396, at *4 n.1.

8   ("Insofar as [*Campion*] decision [is] inconsistent with this Court's opinion, the Court disagrees

9   with that portion of their analysis"). Despite a split within the California district courts,

10  *Henderson*, *Koehler* and *Ries* take the most reasonable approach to standing for injunctive relief

11  in food misbranding cases.

12         Refusing to allow a plaintiff injunctive relief would frustrate the California legislature's

13  purpose in enacting the consumer protection statutes in the first place. Unless injunctive relief is

14  granted to ensure Defendants' unlawful conduct ceases, Plaintiff will remain at risk of

15  inadvertently purchasing a misbranded product that he failed to realize was misbranded at the

16  time of purchase. Because of this, Plaintiff should be entitled to injunctive relief.

17  **VII.   <u>Plaintiff Has Stated A Claim For Unjust Enrichment</u>**

18         Defendants' contends that Plaintiff's claim for unjust enrichment must be dismissed

19  because California does not recognize "unjust enrichment" as a cause of action.  This Court

20  rejected this argument in *Khasin*.  This ruling was correct and the claim should remain.

21                                **CONCLUSION**

22         Based on the foregoing, Plaintiff respectfully requests that Defendants' motion be denied.

23         Dated:  September 3, 2013.

24                                        Respectfully Submitted,

25

26                                        <u>s/Pierce Gore</u>
                                          Pierce Gore (SBN 128515)
27                                        PRATT & ASSOCIATES
                                          1871 The Alameda, Suite 425
28                                        San Jose, CA 95126
                                          (408) 429-6506

1                 pgore@prattattorneys.com

2                 *Attorney for Plaintiff*

3

                **CERTIFICATE OF SERVICE**

4

5     I hereby certify that a true and correct copy of the forgoing was filed and served via the Court's ECF filing system on this 3rd day of September, 2013 on all attorneys of record.

6                 *s/Pierce Gore*_____
                Pierce Gore

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28