United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERT PRATT, individually and on behalf of all others similarly situated | Case No. 5:12-CV-05652-EJD |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| WHOLE FOODS MARKET CALIFORNIA, INC.; MRS. GOOCH'S NATURAL FOODS MARKET INC.; WFM-WO, INC.; and WFM PRIVATE LABEL, L.P., | **[Re: Docket No. 29]** |
| Defendants. | |

Presently before the Court is Defendants Whole Foods Market California, Mrs. Gooch's

Natural Foods Market, WFM-WO and WFM Private Label's ("Whole Foods") Motion to Dismiss

Plaintiff's Amended Complaint ("AC"). Dkt. No. 29. Plaintiff Pratt filed this putative class action

against Whole Foods alleging that several of Whole Food's products have been improperly labeled

so as to amount to misbranding and deception in violation of several California and federal laws.

Per Civ. L.R. 7-1(b), the motion was taken under submission without oral argument.

Having fully reviewed the parties' papers, the Court grants in part and denies in part Defendants'

Motion to Dismiss.

1

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**I. BACKGROUND**

Plaintiff filed his original Complaint in this case on November 2, 2012 against Whole Foods Market, Inc. ("WFM"). Dkt. No. 1. WFM filed a motion to dismiss for lack of personal jurisdiction. Dkt. No. 14. Plaintiff's AC was filed on May 2, 2013, substituting the current Defendants as named parties. Dkt. No. 21. Defendants filed a Motion to Dismiss and Strike on July 15, 2013. Dkt. No. 29. On August 30, 2013, the Court approved the parties' stipulation narrowing the issues in the case. Plaintiff abandoned all claims in the AC regarding unpurchased substantially similar products and the 365 Everyday Value Whipped Topping product. Dkt. No. 34.

Plaintiff is a California consumer who, since November 2, 2008, spent over $25 on a variety of Defendants' food products. Plaintiff alleges he purchased the following 365 Everyday Value products: organic chicken broth, tomato ketchup, organic ketchup, apple cinnamon instant oatmeal, whipped topping, cola, ginger ale, root beer and Natural Italian Soda (green apple and blood orange flavors). Dkt. No. 21 ¶ 2. Plaintiff argues that the following representations on the packaging of these and other of Defendants' food products were unlawful and/or misleading: (1) "evaporated cane juice" ("ECJ") claims; (2) "natural" claims; and (3) "no sugar added" claims. As per this Court's order of August 30, 2013, all claims based on the 365 Everyday Value Whipped Topping product are dismissed with prejudice as to Plaintiff and without prejudice as to any putative class member. Dkt. No. 34. Therefore, Plaintiff's "no sugar added" claims are dismissed, as the only product alleged to have such a misleading claim was the whipped topping.

Plaintiff alleges the following causes of actions: violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq., (counts 1-3); violation of the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq., (counts 4-5); violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., (count 6); and unjust enrichment (count 7). Dkt. No. 21 ¶ 135-194.

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

## II. LEGAL STANDARD

### A. Rule 8(a)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). Moreover, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." Twombly, 550 U.S. at 556-57.

When deciding whether to grant a motion to dismiss, the court generally "may not consider any material beyond the pleadings." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court must accept as true all "well-pleaded factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The court must also construe the alleged facts in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, the court may consider material submitted as part of the complaint or relied upon in the complaint, and may also consider material subject to judicial notice. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

### B. Rule 9(b)

Fraud-based claims are subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b). In that regard, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). To that end, the allegations

3

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
For the Northern District of California

1    must contain "an account of the time, place, and specific content of the false representations as well

2    as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764

3    (9th Cir. 2007) (citation omitted).  Averments of fraud must be accompanied by the "who, what,

4    when, where, and how" of the misconduct charged. Vess v. Ciba-Geigy Corp. USA, 317 F.3d

5    1097, 1106 (9th Cir. 2003) (citation omitted).  Additionally, "the plaintiff must plead facts

6    explaining why the statement was false when it was made." Smith v. Allstate Ins. Co., 160

7    F. Supp. 2d 1150, 1152 (S.D. Cal. 2001); see also In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541,

8    1549 (9th Cir. 1994) (en banc) (superseded by statute on other grounds).

9          **C. Rule 12(b)(1)**

10         A party may file a motion to dismiss with the Court for lack of subject matter jurisdiction.

11   Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may be either facial or factual. Wolfe v.

12   Strankman, 392 F.3d 358, 362 (9th Cir. 2004).  A facial 12(b)(1) motion involves an inquiry

13   confined to the allegations in the complaint, whereas a factual 12(b)(1) motion permits the court to

14   look beyond the complaint to extrinsic evidence. Id.  When a defendant makes a facial challenge,

15   all material allegations in the complaint are assumed true, and the court must determine whether

16   lack of federal jurisdiction appears from the face of the complaint itself. Wolfe, 392 F.3d at 362.

17         On a factual challenge, the party opposing the motion must produce affidavits or other

18   evidence necessary to satisfy its burden of establishing subject matter jurisdiction. Safe Air For

19   Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  Under a factual attack, the court need

20   not presume the plaintiff's allegations are true. White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000);

21   accord Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).  In the absence of a full-

22   fledged evidentiary hearing, however, disputed facts pertinent to subject matter jurisdiction are

23   viewed in the light most favorable to the nonmoving party. Dreier v. United States, 106 F.3d 844,

24   847 (9th Cir. 1996).

25         Federal courts are courts of limited jurisdiction, adjudicating only cases which the

26   Constitution and Congress authorize. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S.

27   375, 377 (1994).  An Article III federal court must ask whether a plaintiff has suffered sufficient

28
                                                4

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

*United States District Court*
*For the Northern District of California*

1      injury to satisfy the "case or controversy" requirement of Article III of the U.S. Constitution.  To

2      satisfy Article III standing, a plaintiff must allege: (1) an injury in fact that is concrete and

3      particularized, as well as actual and imminent; (2) that the injury is fairly traceable to the

4      challenged action of the defendant; and (3) that it is likely (not merely speculative) that the injury

5      will be redressed by a favorable decision.  Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.,

6      528 U.S. 167, 180-81 (2000); Lujan v. Defenders of Wildlife, 504 U.S. 555, 561-62 (1992).

7              At least one named plaintiff must have suffered an injury in fact.  See Lierboe v. State Farm

8      Mut. Auto. Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003) ("if none of the named plaintiffs

9      purporting to represent a class establishes the requisite of a case or controversy with the

10     defendants, none may seek relief on behalf of himself or any other member of the class").

11             A suit brought by a plaintiff without Article III standing is not a "case or controversy," and

12     an Article III federal court therefore lacks subject matter jurisdiction over the suit.  Steel Co. v.

13     Citizens for a Better Env't, 523 U.S. 83, 101 (1998).  "A party invoking the federal court's

14     jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."

15     Thompson v. McCombe, 99 F.3d 352, 353 (9th Cir. 1996).  If a court determines that it lacks

16     subject matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

17     **III. DISCUSSION**

18             Plaintiff's case has two facets: (1) the "unlawful" prong, claiming that Defendants'

19     packaging and labels violate state and federal laws, making the products "misbranded" and

20     therefore illegal to sell, possess, lack economic value, and legally worthless; (2) the "fraudulent"

21     prong, claiming that the labels are misleading, deceptive, unfair, and fraudulent.

22             Defendants challenge Plaintiff's claims on the grounds that they are preempted, the doctrine

23     of primary jurisdiction requires dismissal, the claims are implausible, the claims are not pled with

24     the required particularity, and unjust enrichment is not a claim in California.

25             **A. Statutory Framework**

26             The operative statute in this matter is the Food, Drug, and Cosmetic Act ("FDCA"), 21

27     U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"),

28
                                                          5

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

**United States District Court**
For the Northern District of California

1    21 U.S.C. § 343 <u>et seq.</u>  21 U.S.C. § 343 establishes the conditions under which food is considered

2    "misbranded."  Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false

3    or misleading in any particular."

4            The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §

5    109875 <u>et seq.</u>, incorporates the requirements of the FDCA as the food labeling requirements of the

6    state of California.  Plaintiff brings claims for relief under the UCL, FAL, and CLRA based on

7    Defendants' alleged violations of the Sherman Law.  The UCL prohibits business practices that are

8    unlawful, unfair, or fraudulent.  The "fraudulent" prong of the UCL "requires a showing [that]

9    members of the public are likely to be deceived."  <u>Wang v. Massey Chevrolet</u>, 97 Cal. App. 4th

10   856, 871 (2002).  The "unlawful" prong of the UCL "borrows violations of other laws and treats

11   them as independently actionable."  <u>Daugherty v. Am. Honda Motor Co., Inc.</u>, 144 Cal. App. 4th

12   824, 837 (2006).  As for the "unfair" prong, "California appellate courts disagree on how to define

13   an 'unfair' act or practice in the context of a UCL consumer action."  <u>Morgan v. Wallaby Yogurt</u>

14   <u>Co., Inc.</u>, No. 13-CV-00296-WHO, 2014 WL 1017879, at *11 (N.D. Cal. March 13, 2014) (citing

15   <u>Davis v. Ford Motor Credit Co.</u>, 179 Cal. App. 4th 581, 594 (2009)).  Some courts have held that

16   the "unfair" prong requires alleging a practice that "offends an established public policy or . . . is

17   immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the

18   policy must be "tethered to specific constitutional, statutory or regulatory provision."  <u>Bardin v.</u>

19   <u>Daimlerchrysler Corp.</u>, 136 Cal. App. 4th 1255, 1263, 1266 (2006) (citations omitted).  Other

20   courts have held that the court must apply a balancing test that "weigh[s] the utility of the

21   defendant's conduct against the gravity of the harm to the alleged victim."  <u>Schnall v. Hertz Corp.</u>,

22   78 Cal. App. 4th 1144, 1167 (2000).

23           **B. Standing for Unpurchased Products**

24           As per the Court's order of August 30, 2013, Plaintiff's claims based on products he

25   himself has not purchased, including but not limited to all claims based on any products Plaintiff

26   identifies in the AC as "Substantially Similar Products" are dismissed with prejudice as to Plaintiff

27   and without prejudice as to any other putative class member.  Dkt. No. 34.  Plaintiff's allegations

28
                                                      6
     Case No. 5:12-CV-05652-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

1    regarding products he never purchased, including but not limited to all allegations regarding

2    "Substantially Similar Products" are stricken from the AC.  Plaintiff shall not be permitted to re-

3    allege in any future amended complaint or in any other action any claims based on products he has

4    not himself purchased.  Therefore, the Court need not address Defendants' argument regarding

5    standing.

6        **C. Preemption**

7        Defendants argue that each of Plaintiff's causes of action predicated upon state law is

8    impliedly and expressly preempted by the FDCA.  Defendant contends that language in the federal

9    law explicitly precludes Plaintiff, a private actor, from enforcing this federal law and the FDA

10   regulations.  Defendants further argue that such enforcement is preempted because a judgment in

11   Plaintiff's favor would impose requirements different from or in addition to the exhaustive federal

12   laws and regulations.

13       The preemption doctrine stems from the Supremacy Clause of Article VI of the U.S.

14   Constitution, under which federal law is deemed the "supreme law of the land."  Federal law

15   preempts state law where any of the three forms of preemption are found: (1) express preemption;

16   (2) field preemption; and (3) and implied preemption.  Hillsborough Cnty., Florida v. Automated

17   Med. Labs. Inc., 471 U.S. 707, 713 (1985).  In other words, federal preemption occurs when

18   Congress enacts a statute that explicitly preempts state law; when state law actually conflicts with

19   federal law; or when federal law occupies a legislative field to such an extent that it is reasonable to

20   conclude that Congress left no room for state regulation in the field.  Chae v. SLM Corp., 593 F.3d

21   936, 941 (9th Cir. 2010).

22       **1. Implied Preemption**

23       Defendants argue that to the extent that Plaintiff seeks to enforce labeling rules that are

24   identical to the FDA regulations, Plaintiff's claims are impliedly preempted because, pursuant to

25   the FDCA, private litigants are prohibited from suing to enforce compliance with the FDA

26   regulations.  In this case, however, Plaintiff has not brought suit to enforce the federal statute;

27   rather, Plaintiff's action is based on the Sherman Law, a parallel state law that mirrors the relevant

28

7

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
For the Northern District of California

1    sections of the FDCA and the NLEA.  In such cases, courts have refused to find that preemption

2    precludes the private, state-based causes of action.  See Brazil v. Dole Foods Co., 935 F. Supp. 2d

3    947 (N.D. Cal. 2013); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1118 (N.D. Cal.

4    2010); Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 371 (N.D. Cal. 2010); see also

5    Hughes v. Boston Scientific Corp., 631 F.3d 762 (5th Cir. 2011).

6         To bolster their argument, Defendants point to the Ninth Circuit's decision in Pom

7    Wonderful LLC v. Coca-Cola Co., 679 F.3d 1170 (9th Cir. 2012), which was a suit brought under

8    the federal Lanham Act alleging false and deceptive labeling.  Id.  Based on the particular facts of

9    the case, the court held that a plaintiff could not bring federal Lanham Act claims where doing so

10   would require litigating whether the conduct in question violates the FDCA.  Id. at 1176.  Contrary

11   to Defendants' contention, the Pom Wonderful court only held that the FDCA bars causes of

12   actions brought under the federal Lanham Act where doing so would implicate the rules and

13   regulations set forth under the FDCA and is therefore inapplicable to the case at hand.  Id.; see also

14   Bruton v. Gerber Products Co., 961 F. Supp. 2d 1062, 1080 (N.D. Cal. 2013); Brazil, 935 F. Supp.

15   2d 947; Delacruz v. Cytosport, Inc., No. C-11-3532-CW, 2012 WL 2563857, at *7 n.3 (N.D. Cal.

16   June 28, 2012) ("[T]he Ninth Circuit did not rule on whether the FDCA expressly preempted

17   Pom's state law claims under the UCL and FAL. . . . The Ninth Circuit's preemption ruling was

18   limited to a finding that the FDCA preempted Pom's claims under the Lanham Act.").

19        Defendants further rely on the Ninth Circuit's decision in Perez v. Nidek Co., Ltd., 711

20   F.3d 1109 (9th Cir. 2013), however that decision is factually distinguishable from this case because

21   it arose in the context of medical devices regulated by the FDCA and courts in this district have

22   found that its reasoning does not apply to food labeling cases.  Bruton, 961 F. Supp. 2d at 1082.

23                    **2. Express Preemption**

24        Defendants next argue that express preemption language from the FDCA acts as a bar to

25   Plaintiff's state-based claims.  Defendants contend that Plaintiff's claims are preempted because

26   Plaintiff is seeking to impose requirements that are "not identical" to the language of the FDCA

27   statute and the rules and regulations imposed by the FDA.

28
                                         8

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1       State consumer protection laws are preempted if they seek to impose requirements that

2   contravene the requirements set forth by federal law.  See Wyeth v. Levine, 555 U.S. 555 (2009);

3   see also Astiana v. Ben & Jerry's Homemade, Inc., Nos. C-10-4387-PJH, C-10-4937-PJH, 2011

4   WL 2111796 (N.D. Cal. May 26, 2011).  The FDCA, as amended by the NLEA, contains an

5   express preemption provision, making clear that state laws imposing labeling requirements not

6   identical to FDA mandates are preempted.  21 U.S.C. § 343-1(a).  However, "where a requirement

7   imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have

8   repeatedly refused to find preemption."  Chacanaca, 752 F. Supp. 2d at 1118.  This means that a

9   plaintiff's claims need not fail on preemption grounds if the requirements she seeks to impose are

10  identical to those imposed by the FDCA and the NLEA amendments.

11      Courts in this district have generally found express preemption under the FDCA only when:

12  (1) the FDA requirements with respect to a particular food label or package are clear; and (2) the

13  product label or package at issue is in compliance with that policy, such that plaintiff necessarily

14  seeks to enforce requirements in excess of what the FDCA, NLEA, and the implementing

15  regulations require.  Ivie v. Kraft Food Global, Inc., No. C-12-02554-RMW, 2013 WL 685372, at

16  *8 (N.D. Cal. July 12, 2013).

17      Underlying Plaintiff's causes of action is the allegation that Defendants' practices have

18  violated California state law provisions that govern the types of representations made on food

19  labels.  Plaintiff contends that these provisions mirror the FDCA and federal regulations.

20                          **a. Evaporated Cane Juice Claims**

21      Defendants argue that the FDCA does not prohibit the use of the term "evaporated cane

22  juice" and so any of Plaintiff's claims based on this term seek to impose an additional requirement

23  that is not in the FDCA.  The FDA does have draft guidance regarding evaporated cane juice,

24  which courts have found sufficient to state the FDA's position on the term such that a claim based

25  on the term is not in addition to the FDA's regulations.  See Ivie, 2013 WL 685372, at *12 (holding

26  that ECJ claims are not preempted and could go forward under "deceptive" prong of UCL at the

27  motion to dismiss stage); see also Wilson v. Frito-Lay N. Am., No. 12-1586-SC, 2013 WL

28                                              9

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

1   1320468, at \*10-11 (April 1, 2013) (holding that MSG claims were not preempted where "an

2   agency interprets its own regulations, even if through an informal process").[1]

3          As such, contrary to Defendants' contention, complying with the demand requested by

4   Plaintiff in this cause of action would not require that Defendants undertake food labeling or

5   representation different from the provisions of the FDCA or the rules and regulations promulgated

6   by the FDA.  For these reasons, the Court cannot conclude that Plaintiff's ECJ claims are expressly

7   preempted.  See Astiana, 2011 WL 2111796, at \*10 (finding that the same section of the FDCA

8   does not preempt state-based UCL claims that would not impose requirements upon the defendant

9   that differ from the federal requirements); Lockwood v. ConAgra Foods, Inc., 597 F. Supp. 2d

10  1028, 1031 (N.D. Cal. 2009) (same).

**b. Natural Claims**

12         Defendants argue that the FDA has no binding regulation on "natural" labeling and Plaintiff

13  is attempting to enforce a non-binding regulation regarding such labels.  As explained by the Ivie

14  court, in 1993 the FDA stated that it would not restrict the use of the term "natural" except for

15  added color, synthetic substances, and flavors and would maintain its policy that the term "natural"

16  means that nothing artificial or synthetic (including all color additives regardless of source) has

17  been included in, or added to, a food that would not normally be expected to be in the food.  Ivie,

18  2013 WL 685372, at \*12-13 (citing 58 Fed. Reg. 2302, 2407 (1993)).

19         Numerous courts in this district have rejected the idea that unfair competition claims based

20  on "natural" type labels are expressly preempted by FDA regulations.  See Ivie, 2013 WL 685372,

21  at \*13 ("[p]ermitting a factual determination to go forward with respect to whether the challenged

22  'natural' labels in this case would deceive a reasonable consumer is not akin to defining FDA

23  policy, but rather is a finding of fact with respect to this particular plaintiff and product, and would

24  not risk undermining the agency's expertise in this area"); Lam v. General Mills, 859 F. Supp. 2d

25

26  [1] However, the court noted that while the FDA's regulatory statement was a binding interpretation of the FDA's own
    rules, the parties had not explained how (if at all) that interpretation could apply retroactively to the defendant's labels.
27  In a subsequent order on the motion to dismiss plaintiff's second amended complaint, the court found that because the
    parties disputed whether the interpretation applies retroactively, the "no MSG" labels printed prior to the FDA's
28  statement were actionable.  Wilson, 961 F. Supp. 2d 1134, 1146 (N.D. Cal. 2013).

10

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
For the Northern District of California

1   1097, 1104-05 (N.D. Cal. 2012) (rejecting express preemption with respect to "made with real

2   fruit" labels because there was a factual question as to whether a reasonable consumer might be

3   misled by the label); <u>Lockwood</u>, 597 F. Supp. 2d at 1031 (rejecting express preemption and field

4   preemption with respect to the use of the term "all natural" because the FDA's decision not to

5   adopt a regulation regarding the use of the term "natural" indicates "an intent not to occupy the

6   field"); <u>Astiana</u>, 2011 WL 2111796, at *10 (rejecting express preemption with respect to the use of

7   the term "natural" where no FDA regulation exists to preempt state law).

8       As such, Plaintiff's claims are not preempted.

9       **D. Primary Jurisdiction**

10      The primary jurisdiction doctrine allows courts to "stay proceedings or to dismiss a

11  complaint without prejudice pending the resolution of an issue within the special competence of an

12  administrative agency." <u>Ivie</u>, 2013 WL 685372, at *5 (quoting <u>Clark v. Time Warner Cable</u>, 523

13  F. 3d 1110, 1114 (9th Cir. 2008)).  Courts consider the following factors in deciding whether the

14  doctrine of primary jurisdiction applies: "(1) the need to resolve an issue that (2) has been placed

15  by Congress within the jurisdiction of an administrative body having regulatory authority (3)

16  pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority

17  that (4) requires expertise or uniformity in administration." <u>Ivie</u>, 2013 WL 685372, at *5.

18      Where determination of a plaintiff's claim would require a court to decide an issue

19  committed to the FDA's expertise without a clear indication of how the FDA would view the issue,

20  courts of this district have found that dismissal or stay under the primary jurisdiction doctrine is

21  appropriate.  See <u>Hood v. Wholesoy & Co., Modesto Wholesoy Co. LLC</u>, No. 12-CV-5550-YGR,

22  2013 WL 3553979, at *5-6 (N.D. Cal. July 12, 2013) (ECJ and soy yogurt claims dismissed

23  because the FDA's position is unsettled) ; <u>Astiana v. Hain Celestial</u>, 905 F. Supp. 2d 1013, 1016-

24  17 (N.D. Cal. 2012) (holding that "[i]n absence of any FDA rules or regulations (or even informal

25  policy statements) . . . the court declines to make any independent determination of whether [the

26  label] was false or misleading" and the claims were barred under the primary jurisdiction doctrine).

27

28

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

In contrast, however, where FDA policy is clearly established with respect to what constitutes an unlawful or misleading label, the primary jurisdiction doctrine is inapplicable because there is little risk that the courts will undermine the FDA's expertise.  See Brazil, 935 F. Supp. 2d at 959 (where the FDA has established requirements applicable to the violations, there is no risk of undercutting the FDA's judgment and authority, thus a stay is not necessary).

### 1. Evaporated Cane Juice Claims

Some courts in this district have decided that the FDA's position on the use of the term "evaporated cane juice" is unsettled and should therefore be determined by the FDA, not by courts. See Hood, 2013 WL 3553979, at *5-6 ("with respect to 'evaporated cane juice' . . . the FDA's position is not yet settled . . . the Court finds it appropriate to defer to the authority and expertise of the FDA. . . .").  Other courts have found that the FDA's guidance suggests that the agency does not view the issue as unsettled and the claim is not precluded by primary jurisdiction doctrine.  See Swearingen v. Yucatan Foods, L.P., No. C-13-3544-RS, 2014 WL 553537 (N.D. Cal. Feb. 7, 2014); Gitson v. Clover Stornetta Farms, No. C-13-01517-EDL, 2014 WL 172338, at *12 (N.D. Cal. Jan. 15, 2014); Morgan v. Wallaby Yogurt Co., Inc., No. 13-CV-0296-WHO, 2013 WL 5514563, at *4 (N.D. Cal. Oct. 4, 2013); Werdebaugh v. Blue Diamond Growers, No. 12-CV-02724-LHK, 2013 WL 5487236, at *8-9 (N.D. Cal. Oct. 2, 2013) (FDA, through guidance and warning letters, has articulated a position on ECJ); Kane v. Chobani, Inc., No. 12-CV-02425-LHK, 2013 WL 3703981, at *17 (N.D. Cal. Jul. 12, 2013), vacated by 2013 WL 5529723 (N.D. Cal. Jul. 25, 2013), reconsidered by 2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) (denying motion to dismiss ECJ claim on primary jurisdiction ground, but granting motion to dismiss claim that use of ECJ in yogurt violated standards of identity for yogurt on primary jurisdiction grounds)[2]; Ivie, 2013 WL 685372, at *12 (holding that ECJ claims could go forward under "deceptive" prong of UCL); Samet v. Procter & Gamble, Co., No. 12-CV-01891-PSG, 2013 WL 3124647, at *8 (N.D.

_____

[2] In Kane v. Chobani, No. 12-CV-02425-LHK, 2013 WL 5289253 (N.D. Cal., Sept. 19, 2013), the court ultimately dismissed plaintiffs' ECJ allegations for failure to sufficiently state a claim under Rule 8(a) and Rule 9(b) because plaintiffs did not adequately plead that they believed the yogurts contained "only natural sugars from milk and fruit and did not contain added sugars or syrups."  Id. at *7.

12

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1    Cal. June 18, 2013) (FDA regulation that common or usual name be used to identify ingredients

2    encompasses ECJ).

3        This Court adopts the position taken by a majority of courts in this district, finding that ECJ

4    claims need not be dismissed as a result of the primary jurisdiction doctrine.

5        **2. Natural Claims**

6        Defendants point to <u>Cox v. Gurma</u>, No. 12-CV-06502-YGR (N.D. Cal. July 11, 2013) (Dkt.

7    No. 68), as an example of a case barring "natural" claims in a food labeling case under the doctrine

8    of primary jurisdiction.  While the court in <u>Cox</u> referred a "natural" claim to the FDA under the

9    primary jurisdiction doctrine, the facts of that case differentiate it from the case at hand.  The

10   question in <u>Cox</u> focused specifically on whether foods containing GMO or bioengineered

11   ingredients could be labeled "natural," something which both parties agreed the FDA had not yet

12   addressed, and an issue which is not raised in the current case.

13       Courts in this district have declined to apply the primary jurisdiction doctrine to cases

14   involving "natural" claims similar to Plaintiff's claims.  <u>See</u> <u>Jones v. ConAgra Foods, Inc.</u>, 912 F.

15   Supp. 2d 889 (N.D. Cal. 2012); <u>Lockwood</u>, 597 F. Supp. 2d at 1034-35.  This Court agrees that

16   "natural" claims are not barred by the primary jurisdiction doctrine.

17       **E. Sufficiency of Claims**

18       Plaintiff alleges two different facets of his argument against Defendants.  First, Defendants'

19   packages and labels render the products "misbranded" and therefore unlawful; second, Defendants'

20   labels are "fraudulent" and "misleading."  Plaintiff argues that the first facet of the case does not

21   sound in fraud.

22       For all claims under the UCL that arise from deceptive advertising, as Plaintiff's claims

23   here do, Plaintiff must plead reliance sufficient to meet Rule 9(b) and show that "members of the

24   public are likely to be deceived."  <u>Williams v. Gerber Prods. Co.</u>, 552 F.3d 934, 938 (9th Cir.

25   2008); <u>Kwikset Corp. v. Superior Court of Orange Cnty.</u>, 51 Cal. 4th 310 (2011).  Whether a

26   practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not appropriate

27   for resolution on the pleadings.  <u>Williams</u>, 552 F.3d at 938-39; <u>Bruton</u>, 961 F. Supp. 2d at 1089.

28

                                        13

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

**United States District Court**
For the Northern District of California

1    Where there are food packaging features that could likely deceive a reasonable consumer, the Ninth

2    Circuit has found that granting a motion to dismiss is inappropriate.  Williams, 552 F.3d at 939.

3           However, where a court can conclude as a matter of law that alleged misrepresentations are

4    not likely to deceive a reasonable consumer, courts have dismissed claims under the UCL, FAL,

5    and CLRA.  Jones, 912 F. Supp. 2d at 899; see Red v. Kraft Foods, Inc., No. 10-CV-1028-GW,

6    2012 WL 5504011, at *4 (C.D. Cal. Oct. 25, 2012) ("where . . . the claim alleges that a consumer

7    will read a true statement on a package and then disregard 'well-known facts of life'" the court

8    granted a motion to dismiss because a reasonable consumer would not be deceived by pictures of

9    vegetables and the true phrase "Made with Real Vegetables"); Carrea v. Dreyer's Grand Ice

10   Cream, Inc., 475 Fed. Appx. 113 (9th Cir. 2012) (unpublished Ninth Circuit case determined that a

11   reasonable consumer would not think the terms "original" or "classic" indicate a wholesome or

12   nutritious product).

13                  **1. "Unlawful" Claims**

14          As discussed above, under the "unlawful" prong of the UCL, a plaintiff must plead reliance

15   when claims are premised on allegedly deceptive advertising.  See Kwikset, 51 Cal. 4th 310;

16   Chobani, No. 12-CV-02425-LHK, 2014 WL 657300, at *5 (N.D. Cal. Feb. 20, 2014); Brazil, 2013

17   WL 5312418, at *8-9.  Defendants argue that Plaintiff cannot avoid the UCL's pleading

18   requirement under the "unlawful" prong.

19          Plaintiff argues that his claims are not based on misrepresentation, rather on the illegality of

20   the products themselves as their misbranding violates the Sherman Law, and therefore there is no

21   need for Plaintiff to prove reliance.  Plaintiff relies on Medrazo v. Honda of N. Hollywood, 205

22   Cal. App. 4th 1 (2012), and Steroid Hormone Product Cases, 181 Cal. App. 4th 145 (2010), for the

23   proposition that no showing of reliance is required where a defendant sells a product that is illegal

24   to sell.  However, as discussed in Chobani, 2014 WL 657300, at *7, these cases are unavailing

25   because Steroid Hormone was decided prior to the California Supreme Court's decision in Kwikset

26   and the alleged unlawful conduct in that case was not based on a statute prohibiting specific types

27   of misrepresentations.  Similarly, Medrazo does not discuss Kwikset's finding that actual reliance

28
                                                     14
     Case No. 5:12-CV-05652-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
     DISMISS

United States District Court
For the Northern District of California

1     applies to claims under the unlawful prong of the UCL.  Plaintiff cannot circumvent the reliance

2     requirement by simply pointing to a regulation or code provision that was violated by the alleged

3     label misrepresentation, summarily claiming that the product is illegal to sell and therefore

4     negating the need to plead reliance.  As this district pointed out in Brazil, if the court held that a

5     plaintiff "has standing to bring claims based solely upon allegations that he would not have

6     purchased a product that was misbranded, purchasers who never 'viewed the defendant's

7     advertising' or misleading labeling would have standing to sue.  Such a holding is inconsistent with

8     Proposition 64 and Kwikset."  Brazil, 2013 WL 5312418, at *9.  Therefore, actual reliance must be

9     pled in order to satisfy the requirements of the UCL.

10                          **2. "Fraudulent" Claims**

11           The Court finds that the "natural" labels may deceive a reasonable consumer, the claims are

12    properly pled, and the claims are inappropriate to resolve at the motion to dismiss stage.  See Jones,

13    912 F. Supp. 2d at 901; Ivie, 2013 WL 685372, at *12.  However, the ECJ claim will be dismissed

14    with leave to amend based on the reasoning of two recent cases, Avoy v. Turtle Mountain, No. 13-

15    CV-0236-LHK, 2014 WL 587173 (N.D. Cal. Feb. 14, 2014) and Chobani, 2013 WL 5289253.

16    Like the plaintiff in Avoy, Plaintiff included the label of the purchased product, which lists "sugar"

17    as an included nutrient and clearly show how much sugar is contained in the product.  As in

18    Chobani, Plaintiff indicates that he knows that ECJ is the same as "sugar" and "dried cane syrup."

19    Further, the AC fails to allege what Plaintiff believed ECJ to be if not sugar and does not explain

20    what a reasonable person would believe ECJ to be.

21                   **F. Restitution Based on Unjust Enrichment / Quasi-Contract**

22           Plaintiff claims that Defendants sold products that were not capable of being sold (because

23    their labels violated state and federal regulations), and it would be unjust and inequitable for

24    Defendants to retain the benefit without restitution to Plaintiff and class of the money paid for the

25    products.  Defendants argue that Plaintiff's claim for unjust enrichment / quasi-contract must be

26    dismissed because there is no cause of action for unjust enrichment in California.

27

28
                                              15
      Case No. 5:12-CV-05652-EJD
      ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
      DISMISS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    Courts in this district are split on the issue of whether to dismiss such claims.  A number of

2    courts have held that a plaintiff cannot assert a claim for unjust enrichment that is duplicative of

3    statutory or tort claims.  See Hendricks v. StarKist Co., No. 13-CV-729-YGR, 2014 WL 1244770,

4    at *11 (N.D. Cal. March 25, 2014); Pardini v. Unilever U.S., Inc., 961 F. Supp. 2d 1048, 1060

5    (N.D. Cal. 2013); Morgan, 2013 WL 5514563, at *11; Brazil, 2013 WL 1209955, at *18; Chobani,

6    2013 WL 5289253, at *11; Lanovaz v. Twinings N. Am., Inc., No. C-12-02646-RMW, 2013 WL

7    675929, at *7 (N.D. Cal. Feb. 25, 2013); Smith v. Ebay Corp., No. C-10-03825-JSW, 2012 WL

8    27718, at *9-10 (N.D. Cal. Jan. 5, 2012).  Other courts declined to dismiss when an unjust

9    enrichment claim is based on quasi contract, because it is not deemed a standalone claim.  See

10   Jones, 912 F. Supp. 2d at 904; Larsen v. Trader Joe's Co., C 11-05188 SI, 2012 WL 5458396, at *7

11   (N.D. Cal. June 14, 2012); Astiana, 2011 WL 2111796, at *11.

12   The Court agrees with the line of reasoning proffered in the former cases, as Plaintiff's

13   claim and the relief sought is duplicative of Plaintiff's statutory claims under the UCL and CLRA.

14   As such, this claim is dismissed.

15   **G. Injunctive Relief**

16   Defendants argue that Plaintiff has no standing to seek injunctive relief because he cannot

17   demonstrate that he will be threatened by the same violation in the future, as the AC states that he

18   stopped buying Defendants' products after learning they were mislabeled.  Courts in this district

19   have dismissed injunctive relief claims in instances where the products at issue were discontinued

20   or where a plaintiff's claims were all dismissed.  See Bronson v. Johnson & Johnson, Inc., No. C-

21   12-04184-CRB, 2013 WL 1629191, at *1, n.3 (N.D. Cal. Apr. 16, 2013) (claims for injunctive

22   relief rendered moot because product was discontinued); Brazil, 935 F. Supp. 2d 947 (all claims

23   dismissed).  Other courts have allowed claims for injunctive relief to survive a motion to dismiss.

24   See Astiana, 2011 WL 2111796, at *12-13 (claim for injunctive relief cannot be determined until

25   factual record is developed).  Here, Defendants have not demonstrated that the products at issue

26   were discontinued.  Therefore, this Court finds that at this juncture, the claim for injunctive relief

27   may proceed and will not be dismissed.

28

16

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss will be GRANTED in part and DENIED in part.  Plaintiff's claims regarding evaporated cane juice and unjust enrichment are dismissed with leave to amend.

If Plaintiff wishes to further amend the complaint, the Court orders that it be pled in compliance with the pleading standards of Rules 8 and 9 and filed within 15 days of the date of this order.

**IT IS SO ORDERED**

Dated: March 31, 2014



EDWARD J. DAVILA
United States District Judge

Case No. 5:12-CV-05652-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS